## The Peninsular Railway Company v. Edwin F. Duncan and others.

*Railroads: Corporations: Preliminary subscribers: Articles of incorporation: Stock: Assessments.* One of the original associates for the formation of a railway company, who signed a subscription, agreeing to take a certain number of shares of the capital stock of the proposed company, and to pay therefor, "at such times and in such sums as the same shall be assessed, demanded and required to be paid by the directors of said company," but did not sign the articles of incorporation, or subscribe for stock on the commissioners' books, is held liable upon his preliminary subscription, after the company has been formed, and assessments made, and payment demanded.—CAMPBELL, J., dissenting.

*Statute construed: "Subscribers."* While a preliminary subscription is not an indispensable prerequisite in the formation of a corporation under our general railroad law, yet it is contemplated by the statute as a proceeding which will, generally at least, take place; and the provision of the act that "the persons who have *subscribed*, and all persons who shall from time to time become stockholders," etc., shall be a body corporate, was intended to include both the original subscribers and subscribers to the articles; but it was not contemplated that such original subscribers would fail to subscribe the articles, and therefore no distinction is made between these different classes of subscribers, and no provision is expressly made for such an exceptional case.

*Subscription: Mutual promises: Contracts: Consideration.* The promises contained in such an agreement as this subscription is, would be enforceable at common law, where the object to be accomplished was lawful, and where it was possible to make to the several promissors the return which their subscription called for.

Such an agreement would not, even before the articles were signed, be a mere *nudum pactum;* if a subscriber thereto pays in five per cent. upon it, and this is received and retained by the custodian agreed upon by the associates, he acquires the important right to take part in the organization, and the choice of directors, and in the determination of the route, and in shaping the constitution of the company.

There are no reasons personal to the subscriber, and which render it unjust or inequitable that he should be held, in the absence of any renewal of his promise by an execution of the articles; on the contrary, all the requirements of good faith and justice lead in the opposite direction; nor are there any reasons resting on considerations of public policy, requiring all subscriptions to the stock at the time of the organization, to be represented by the signatures to the articles, provided there be the requisite number who do subscribe them, to comply with the statute.

*Preliminary subscribers: Corporators: Statute construed.* A construction of the statute which includes such preliminary subscribers among those who are to be counted as corporators, need not lead to any embarrassment, as the subscriptions, with the articles of association, pass to the hands of the proper officers, and they will furnish all necessary information to the commissioners, who are to receive further subscriptions for the balance of the capital stock, and apportion it if there shall be any excess.

*Subscription to stock: Payment of five per cent: Credit: Implication.* Payment of five per cent. on the subscription, or something equivalent in effect, would be

necessary to entitle the subscriber to participate in the organization, or to make the subscription effectual; but if the requisite amount is paid in by other subscribers, credit might be given for this first payment so as to entitle the subscriber to all the privilege of the rest; and there may be circumstances which would be equivalent to the giving of credit by implication, in the absence of any express understanding to that effect.

*Declaration : Recital: General demurrer.* The declaration in this case does not expressly aver payment of the five per cent., but it does set it forth by way of recital; and it is held sufficient in this particular on general demurrer, or on special demurrer aimed only at other defects.

*Commissioners on subscriptions: Assigning stock: Original corporators.* It is not good cause of demurrer to the declaration in this case, that it does not appear that the commissioners named in the articles of association ever assigned any stock to the defendant; the commissioners do not assign stock at all, except in the event of a surplus, nor even then, except by way of apportionment among those who have subscribed on their books; and the original corporators are entitled to what they subscribed for, independent of any action by the commissioners.

*Subscription paper : Indefiniteness: Identity : General demurrer.* The subscription paper in this case is not open to the objection, on general demurrer to the declaration, that it was ineffectual for its indefiniteness in not locating the line and indicating the *termini* or route, nor sufficiently identifying the project then in view, with the enterprise subsequently set forth in the articles of association; the question of identity might be the subject of dispute and require proof, and whether, on the proper special demurrer, the declaration would be sufficient without an allegation of identity, is not decided.

*Heard July 23 and 24. Decided October 14.*

Error to Kalamazoo Circuit.

*M. S. Brackett, Dwight May* and *D. Darwin Hughes,* for plaintiff in error.

*Severens, Potter & Boudeman,* for defendants in error.

COOLEY, J.

This case presents the question whether one who becomes one of the original associates for the formation of a railway company, and signs a subscription agreeing to take a certain number of shares of the capital stock of the proposed company, and to pay therefor "at such times and in such sums as the same shall be assessed, demanded, and required to be paid by the directors of said company," but who afterwards fails for any reason to sign the articles of incorporation, or to subscribe for stock on the commission-

ers' books, can be held liable upon his preliminary sub-
scription, after the company has been formed, and assess-
ments been made and payment demanded.

The question arises upon the first section of the act for
the incorporation of railroad companies, approved February
12, 1855, as amended in 1867.—*Laws of 1867, Vol. I., p.
90.* The plaintiffs insist that the signers of the prelimi-
nary subscription, whether they afterwards sign the articles
or not, if the corporation is duly formed, have the same
absolute right to stock therein that those have who execute
the articles, or to whom stock is awarded on subscriptions
upon the commissioners' books; and that having a right to
the stock, they are under a corresponding obligation to pay
for it.    On the other hand, the position of the defendants
is, that the preliminary subscription, though possibly a con-
venient step in the organization of a corporation, is by no
means indispensable, but that the corporation originates
with the articles of association, and that no one who pre-
viously had contemplated becoming a member, however
strongly or in whatever form of words he may have
expressed his intention to that effect, is bound by that
expression, if, when the articles are to be signed, he declines
to unite in them, or for any reason fails to do so, and
thereby, expressly or by implication, elects not to become a
member.    Up to that time, it is insisted, every thing is
provisional and inchoate ; nobody is bound or can be bound
without further voluntary action of his own.

A consideration of the question thus presented is peculiar-
ly embarrassing in consequence of the totally different views
which have been taken of it by able jurists in other states
where similar statutes exist.    We have examined the
reported cases with care, and while we find many of the
opinions able, and in the main well reasoned, yet as it is
impossible to reconcile them, and none of them follows
precisely the train of reasoning through which we have
been led to our own conclusion, we have not deemed it
advisable to review the cases in this opinion, but shall pro-

ceed, with such brevity as the case will admit, to present our own views.

It may be quite true, as is insisted on the part of the defense, that a preliminary subscription is not an indispensable requisite in the formation of a corporation under the general railroad law. If the requisite number of persons execute the proper articles, naming therein their directors, and attach thereto the affidavit required by the statute, verifying the fact that they are subscribers for the requisite amount of stock, and have paid to the directors five per centum thereon, it is difficult to perceive any ground upon which it could be plausibly contended that the corporation was not duly organized, or to suggest any important function that the preliminary subscription could have performed for such subscribers, and which in the particular case has not been performed without it. Nevertheless, a very cursory examination of the statute must convince any one that such a subscription, whether indispensable or not, is contemplated as a proceeding which will generally, at least, take place. This is evident from the expressions employed in the statute in conferring authority to organize. The persons who may incorporate themselves are "any number of persons not less than twenty-five, being subscribers to the stock of any contemplated railroad." They are allowed to do so "when stock to the amount of one thousand dollars for every mile of said road so intended to be built" "shall be in good faith subscribed and five per cent. paid thereon." There cannot be subscriptions to the stock until something is in writing for the subscribers to sign. The statute gives no form for such a subscription; it indicates no machinery by means of which it is to be originated or signatures obtained. Every thing is left to the voluntary action of the promoters of the enterprise, and whatever form of writing is satisfactory to them, and sufficiently indicates the general purpose sought to be accomplished and the share the several subscribers are to take in it, would undoubtedly be sufficient.

By any such voluntary subscription to take stock, how-
ever, we should naturally understand some mutual agree-
ment by which the promoters severally agree to take and
pay for certain shares in the proposed corporation; some-
thing, in short, like or similar to the agreement which was
actually entered into in the present case. We do not under-
stand that there would be any difficulty at the common
law in enforcing the promises contained in an agreement of
this general nature against the several promisors, where the
object to be accomplished was lawful, where a beneficial
purpose was in view, and where it was possible to make to
the several promisors the return which their subscriptions
called for. In such cases the promises are mutual; acts are
done and moneys expended in reliance upon the subscrip-
tions, and the moment the promises are accepted by the
organization and action of the corporation to which they
are provisionally made, there can generally be no difficulty
in their enforcement if the corporation then has it in its
power to give the stock subscribed for, and offers to do so.
In such a subscription thus accepted there would be all the
requisites of a valid contract; proper parties, and a promise
made upon a legal and valuable consideration.

In this case, however, the question involved is not one
to be settled entirely by the rules of the common law, but
there is involved a question of statutory construction. It
is argued by the defense that the terms of the statute are
such as to make any preliminary subscription that may
have been entered into entirely immaterial and nugatory
the moment the articles are executed, and that promises
therein contained are incapable of enforcement because under
the statute the subscribers are not entitled to stock in the
corporation, and consequently do not receive a consideration
for their promises. This construction arises principally
upon one clause of the first section of the general railroad
act, which, after providing what the articles of association
shall contain, and for their being subscribed and recorded,
declares that " thereupon, the persons who have subscribed,

and all persons who shall from time to time become stock-holders in such company, shall be a body corporate," etc. The argument is that by the express terms of this statute only the subscribers to the articles and those who *subsequently* become stockholders in the manner provided by law,—that is to say, by subscribing for stock on the commissioners' books,—can be stockholders or entitled to stock, and consequently the subscribers to the preliminary agreement who do not sign the articles are in terms excluded.

It is possible that a strict and literal interpretation of the statute would require this construction to be put upon it; but it does not necessarily follow that such a construction would be proper or even admissible.    What we should seek here is the intention of the legislature, and not the testing by nice rules of art the language employed.    It may possibly appear, as is too often the case, that the legislation has been carelessly phrased, and will be perverted if tested by nice rules.    There are two very strong reasons why the statute should not be so construed as to make the articles nullify the preliminary subscription if any other construction is admissible.    The first is that it nullifies the mutual promises of parties made for a beneficial object, and which, on grounds of public policy as well as mutual good faith, ought to be sustained and enforced, unless abandoned by common consent.    The second is that, by rendering the preliminary subscription which the statute provides for, if it does not make necessary, a perfectly useless proceeding, it in effect, as has been well said in a leading case supporting this construction—*Troy and Boston R. R. Co. v. Tibbits, 18. Barb., 304–5*—imputes folly to the legislature; an imputation we ought to be very slow to make, and never except upon the most imperative reasons.

Our own view, after a careful examination of the statute, is that the construction which excludes the subscribers to the preliminary subscription from corporate membership, is rather forced than otherwise.    The statute does not say that the persons who have subscribed *the articles of associ-*

*ation*, and those who shall, from time to time, become stockholders, shall be the corporation, but those " who have subscribed." Subscribed what? The very first words of the section provide that the *subscribers* to the stock of a contemplated road may incorporate themselves by complying with certain conditions. The subscribers here intended are unquestionably the subscribers to the preliminary agreement; and these *subscribers*, to use the words of the statute, when the necessary amount of stock is in good faith *subscribed by them*, are allowed to organize. These persons, then, are spoken of as persons who have *subscribed*, and their subscription contemplates that they are to have stock in the proposed corporation. The parties to the articles also subscribe them; their subscription is provided for by the same section, and theirs also contemplates that they are to have stock in the corporation. It is after these different subscriptions for stock are thus spoken of and provided for, that the statute proceeds to say that those who have *subscribed* shall be corporators. What warrant have we for saying that one class of subscribers was intended and not the other?

The truth is, both classes were intended, because in contemplation of the statute the two were to be identical. The statute does not suppose there will be subscribers to the preliminary agreement who do not sign the articles. It provides that after the requisite subscriptions are obtained, the subscribers may select directors, "and thereupon *they shall severally* subscribe articles of association." They are all expected to subscribe the articles, and not merely that portion who may then, on considering the question as a new one, decide to take interests in the company. It is not assumed that there will be any doubt or question that all who have mutually pledged themselves to each other to form a corporation for the object proposed will unite in the necessary steps for that purpose, and it does not therefore distinguish between the subscribers to the two papers, because it supposes no distinction will exist.

We have, nevertheless, to deal with a case where a subscriber to the one has neglected or refused to sign the other; and the question is, whether such neglect or refusal precludes the attaching of any legal liability. We have the case of a subscription provided for by law, designed to accomplish an important beneficial purpose, subscribed by several parties in reliance upon their mutual promises, but which one perhaps elects to annul by not taking a certain further step which the statute contemplates he will take. The corporation to which the subscriber's promise was provisionally made has been called into being and has accepted his promise, and now offers to perform its part by giving the stock subscribed for if it has the power to do so. And the question is, whether, in this exceptional case not provided for or contemplated by the statute, the subscriber may treat his preliminary promise as of no force.

A preliminary question will perhaps be, whether it possessed any force whatever, or, on the other hand, was to be looked upon as mere *nudum pactum*, without either parties or consideration, before the articles were signed. The necessary conclusion from defendant's premises must be, as we think, that it was so. We cannot conclude, however, that such preliminary promises, made in accordance with the law, as a step in the accomplishment of a public enterprise, can be regarded as entirely without legal significance. If a subscriber pays his five per cent. upon his subscription, and it is received and retained by the custodian agreed upon by the associates, we think he has acquired some rights by such subscription and payment. He has acquired the important right to take part in the organization of the corporation, in the choice of directors, in the determination of the route, and in shaping the constitution of the company. These rights are often of high value, and might even be more so in a pecuniary point of view than the stock subscribed for is ever expected to be. It cannot be said that a subscription and payment which secure these important privileges are of no force, nor ought it to be the

28 MICH.—18.

case that the party making them may disaffirm his action
at his own mere pleasure after other parties, more observ-
ant of their own stipulations, have taken further action
which is unquestionably binding upon them, in reliance
upon his promised assistance.

In the present case it does not become necessary to dis-
cuss the question whether a party who expressly revokes
his subscription before the corporation is formed, can be
compelled to pay it afterwards.    Such a case is not, by
the record, placed before us.    Undoubtedly if the corpora-
tion is never formed the subscription becomes a nullity.
No promisee in that case ever comes into existence.    And
if the subscribers are only twenty-five in number, any one
of them may defeat the enterprise by refusing to join in
the articles, because twenty-five are made necessary by the
statute.    It may, under some circumstances, be bad faith
in a subscriber to do this, but he would unquestionably
have the power.    It would be equally true if a larger
number of subscribers should subscribe only the requisite
amount of stock, that any one might defeat an organiza-
tion by refusing to sign the articles unless a further sub-
scription could be obtained from some other source.    In
these cases the subscriber is discharged, not for reasons per-
sonal to himself, but because on grounds of public policy
corporate privileges are withheld from an association which
does not furnish the required evidence of earnestness and
ability to carry on the undertaking.

The case at bar is neither of these.    Here the corpora-
tion has not failed of organization, but a subscriber has
failed, for some unexplained reason, to sign the articles
with the others.    We might suggest a great many possible
reasons for the failure, some of which, unquestionably,
would discharge him from all moral, as well as legal, obli-
gation on his subscription.    We might suppose, for instance,
that the other subscribers considered him an undesirable
associate, and for that reason refused to allow him to take
part in organizing, while willing enough to receive his

money afterwards.   As already said, the stock proposed to be given by the corporation is not the sole consideration for his promise to pay, but he is entitled to the valuable privilege of a voice in determining the important questions to be settled by the articles, and if denied that by his associates, he is absolved from all responsibility.   But this defendant, for aught we know, may have had and enjoyed that privilege, and then failed to subscribe the articles for the express purpose of avoiding responsibility, or, on the other hand, because when sufficient subscriptions were obtained to perfect the organization, it was not deemed necessary or important to obtain further signatures.   But as we do not know the reason, it is idle to indulge in suppositions.   It is sufficient that the defense plant themselves on the broad ground that no original subscriber who fails to sign the articles can be bound by his subscription.

As it has already been seen that the preliminary subscription is in proper form for obligatory force as a mutual promise, and is provided for by the statute, if one who signs it must also sign the articles of association in order to render himself liable, the reasons for requiring this must be either: *First*, reasons personal to himself and which render it unjust or inequitable that he should be held in the absence of any renewal of his promise by an execution of the articles; or *second*, reasons resting on considerations of public policy, and which, independent of any questions of justice or equity as between the individual and his associates, require all subscriptions to the stock at the time of the organization to be represented by the signatures to the articles.

There can be no reasons of the first class, if the subscriber has participated in the organization, or has had the opportunity to do so.   In such a case, with the right to the stock, the subscriber has had, or might at his option have had everything promised him by his associates or by the corporation as the consideration for his promise to pay, and good faith to his associates whose action his promise

may be supposed to have influenced more or less, and who keep on their part the promise mutually made, requires that he should keep his also. It may safely be assumed that they incur expenses for preliminary surveys, procuring subscriptions, pledges of rights of way, and such other matters as are necessary to enable them intelligently and prop-. erly to settle the questions which are to be determined by the articles, and if he allows these to be incurred while his promise stands unrevoked and in reliance upon it, the moral obligation on his part to fulfill his promise is very strong, and in the absence of any unfair dealing on the part of his associates, ought to be regarded by him as imperative.

And we cannot imagine any reasons of public policy for requiring all the preliminary subscribers to sign the articles, or for relieving from responsibility all who do not sign. As the articles constitute a more formal document than the preliminary subscription usually does, and set forth the definite particulars of the enterprise, it will be more satisfactory and conclusive of the precise work the subscribers propose to accomplish, and be less likely to leave questions open to dispute between the individual associates and the organization. The probability, however, that the preliminary subscription will be so vague and uncertain as to raise serious questions as to the actual intent can be no greater than the probability of like questions in innumerable contracts which are being made constantly, and in which it has never been thought even wise to require by law the observance of more formality. We cannot, therefore, suppose that the purpose of requiring the understanding of the parties to be more definitely expressed with a view to its enforcement, was a purpose specially had in view, in requiring the articles to be signed by the associates. They give the particulars of the enterprise for the information of the public who have an interest in knowing precisely what is proposed to be accomplished, how far it is likely to be of public benefit, and to what extent it will stand in the way of or preclude the necessity for other

similar enterprises. They give them also for the information of persons whose interests may possibly be affected by an exercise of the right of eminent domain on behalf of the associates. There is nothing in the statute, however, which indicates that they are required, either mainly or in part, because the preliminary understanding expressed in the first subscription may be supposed to be so vague and uncertain as to make it impolitic to give legal remedies for its enforcement. On the contrary, the statute assumes that a certain number of persons, who are united in the desire to accomplish a certain enterprise, and have mutually agreed with each other to contribute of their means to that end, follow this action by uniting in certain articles, which they put on record to spread before the public the particulars of the enterprise thus agreed upon and understood among themselves. While therefore it is possible that misconceptions may arise from the vague character of the preliminary action, we find nothing in the statute to indicate that the legislature anticipated them, or that it required signatures to the articles with any view to precluding an inquiry into their existence.

We suppose the statute to require the articles to be signed by at least twenty-five associates, representing subscriptions to the amount of a thousand dollars a mile upon which five per centum shall have been paid in, in order that mere bubble enterprises shall not be allowed the apparent sanction of a legal organization, and be afforded the opportunity not only to embarrass and perhaps preclude more substantial projects, but also to have facilities for annoying and perhaps defrauding the public by exercising the right of eminent domain, and by contracting debts in apparent execution of improvements which the means at command give no assurance of being carried out. The state requires this evidence of good faith and ability in the associates before it will endow their association with legal entity; but when these appear to the extent required, the demands of public policy in this regard are satisfied, and

we do not see that the state has any concern in the question whether other associates representing more aid subscribe the articles or not. If the state is satisfied with subscriptions to a certain amount, but the projectors have in fact obtained more, no very good reason can be suggested why the state should impose, as a penalty upon the corporation, that it shall not enforce such additional subscriptions unless the names are obtained to a certain paper required for the purpose of giving public evidence of certain facts already proved by previous subscriptions to the full extent required. And we are therefore forced to the conclusion that when such subscriptions are obtained to the articles as are necessary for the purposes of incorporation, if there are further subscribers to the preliminary subscription, who, for reasons of convenience to themselves, or because it was supposed to be unnecessary, or for any other reason than a previous withdrawal from the enterprise, shall neglect to sign the articles, such previous subscribers cannot, on any ground of public policy, be held discharged from any obligation, either legal or moral, to fulfill their promises.

So far we have not discussed the question whether there can be any embarrassment in counting such preliminary subscribers among the stockholders. We do not see why there need be. The subscriptions, together with the articles of association, will pass to the hands of the proper officers, and they will furnish all necessary information to the commissioners who are to receive further subscriptions for the balance of the capital stock, and apportion it if there shall be any excess. If we are warranted in so construing the statute as to include in the subscribers who are to be counted as corporators when the commissioners begin their labors, those who have subscribed preliminary subscriptions as well as the subscribers to the articles, then the commissioners have only to receive subscriptions for and apportion such portion of the stock as is not represented by these two classes of subscribers. From the best consideration we have been able to give the statute, we think such a con-

struction perfectly legitimate.    Any other would make the preliminary subscription not what on its face it seems to be, a provisional offer for the acceptance of the corporation when formed, but only a provisional offer to make an offer if the subscriber at a subsequent time shall elect to do so. We are unwilling to conclude that the legislature, in pointing out the steps in the organization of a corporation, has indicated among them a proceeding so frivolous and futile. We think the subscribers who, with those who subsequently associate themselves with them, are to be the corporators, are the subscribers to the original subscription; and though it is perfectly true that the statute supposes such subscribers will sign the articles also, it neither takes away their rights nor absolves them from obligations for a failure to observe this formality, but if the corporation is duly formed, on general principles applicable to such undertakings as the preliminary subscribers have entered into, they are liable for the fulfillment thereof· in the absence of any provision of the statute which expressly or by necessary implication must have the effect to release them therefrom.    And our reading of the statute discloses no such provision.

In our discussion of the case so far we·assume that the subscriber paid his five per cent. on the subscription.    This, or something equivalent, would be necessary to entitle him to participate in the organization, and if he fails to obtain that privilege the subscription would probably be ineffectual. He would not be one of the associates in such a case.    But if the requisite amount is paid in by other subscribers, we see no reason to doubt that credit might be given to him for this first payment, and he be admitted to all the privileges of the rest.    What circumstances would be equivalent to the giving of credit by implication in the absence of any express understanding to that effect, it would be out of place to discuss here.    That there might be such circumstances is undoubted.    The present record assumes that the intestate had become one of the original associates, and

if any question of fact is to be raised upon that point, it must be presented upon a proper issue.

The declaration in this case sets out the original subscription, avers that defendant signed the same and agreed to take one thousand dollars of the stock of the proposed corporation, but it does not expressly say that he made any payment. It does aver, however, that the defendant, in consideration of his subscription, "and in consideration that stock to the amount of one thousand dollars for every mile of said Peninsular Railway Extension Company had been subscribed for and taken in good faith, *and five per cent. paid thereon as required by said act*, and in consideration that said Peninsular Railway Extension Company was, to wit: on the third day of January, 1868, duly organized and became a body politic and corporate under the laws of the said state of Michigan, he, the said Delamore Duncan, then and there promised," etc. We are inclined to think that, under a demurrer such as has been interposed in this case, it must be assumed that the defendant had done whatever was necessary to perfect his subscription, and entitle him to participate as one of the associates in organizing, and that his failure to take part in that proceeding was not because of being wrongfully excluded. The allegation that five per cent. had been paid on the subscriptions may fairly be applied distributively, and the allegation that the corporation was duly organized would imply participation or the opportunity to participate in all the associates. And though these facts are set forth by way of recital merely, the declaration in this particular would be good on general demurrer at least, and also on a special demurrer aimed only at other defects.

The special causes of demurrer assigned in this case are: *First*, That it does not appear from the declaration that Duncan ever became a subscriber to the stock of the company by signing the articles of association or subscribing on the commissioners' books, or that he "ever subscribed to the capital stock" of said corporation. This last clause, if

we may judge from the argument, would appear to be intended as a denial that any subscription not made to the articles or upon the commissioners' books could be a valid subscription to the stock. From what has already been said it follows that this cause of demurrer is not well assigned.

*Second,* That it does not appear that the commissioners named in the articles of association ever assigned any stock to Duncan. This also is not well assigned. The commissioners do not assign stock at all, except in the event of a surplus being subscribed for, nor then, except by way of apportionment among those who have subscribed on their books. The original corporators are entitled to what they subscribed for independent of any action by the commissioners.

These are all the defects that are pointed out by the demurrer, but on the argument another was suggested, namely, that the subscription paper was ineffectual for its indefiniteness, inasmuch as it did not locate the line, indicate *termini,* or route, or in any manner sufficiently identify the project which was then in view with the enterprise subsequently set forth in the articles. It is certainly true that the subscription is exceedingly indefinite in these particulars, but the statute prescribes no form, and as everything is to be rendered definite and certain by the articles, the preliminary subscription would seem to be sufficient if it promised contribution to an enterprise which afterwards in the articles the associates proceed to describe with the particularity required by law. It is possible in such a case for the actual identity to become the subject of dispute and require proof; and without undertaking to say that this declaration would be sufficient without an allegation that the road contemplated by the subscription was identical with the one specified in the articles, if the proper special demurrer had been interposed, we must assume the identity on this record.

28 MICH.—19.

Our conclusion is that the demurrer ought to have been overruled. The judgment must therefore be reversed, with costs, and the cause remanded. And in view of the conclusions reached it would be proper that the parties respectively have leave to file new pleadings.

GRAVES, J., and CHRISTIANCY, CH. J., concurred.

CAMPBELL, J.

The only question distinctly presented by the pleadings in this case is, whether, by subscribing such a paper as is set forth in the record, Delamore Duncan became a stockholder in the railway company when it was afterwards organized, without any further signature or subscription. It is only in that character that any liability can be set up against him under the declaration, and there is no other consideration for his liability to this company.

It is to be kept in mind that this is not an action on the case, or in assumpsit by other subscribers, claiming that by any refusal or neglect to become a stockholder he violated the terms of his subscription, on which others relied, and have been damnified by his neglect. The company has been organized on such terms as the parties signing its articles saw fit to impose, and is in full existence as they desire it to be. He is sued in the same way and on the same theory as if he had signed the articles of association; and this subscription, if of any force to sustain this action, is practically equivalent.

I am not able to discover any legal ground for any such claim.

No one can be liable for calls on stock, unless he is a stockholder,—or a subscriber having a present right to have stock assigned to him,—which is the same thing. The issue of scrip is only the evidence of such a right, and may not be made until the stock is paid up.

It has never been provided by law,—so far as I know,—that any one can become an original owner of stock by contract, without some written subscription or undertaking, in such manner as the law allows. And the manner of such subscription is usually prescribed by positive enactment. There is no common-law method of becoming a stockholder in a statutory corporation. This is an elementary proposition.

It is claimed our general railroad law contemplated two kinds of subscriptions,—one in advance of the steps to organize, and one upon which the organization becomes dependent, and from which it derives its legal existence. And it is also claimed, and is necessary to support the declaration, that a person who has signed the one need not sign the other.

While I think the grammatical construction of the section declaring who shall be corporators expressly confines the number to signers of the articles, I do not think that consideration very conclusive, in the face of the very confused and somewhat ambiguous clauses which are included in the section. But it seems to me that the evident purpose of some of these clauses at least, would not be consistent with the construction claimed by plaintiff in error.

In order to make any one liable as a subscriber, it must always appear that he has contracted for the very thing to which his liability is sought to be attached. Mr. Duncan could not have been a stockholder unless he subscribed to the same enterprise and upon the same conditions set out in the articles. The contract cannot rest in parol, for no one can subscribe a parol contract, nor, if he could, would such a contract be valid for any such purpose as this law contemplates. Moreover, there is no claim in the declaration that he ever agreed to any other contract than that set forth in the written subscription, and its identity with the articles must be clearly shown.

Whether any other agreement could be made or not, the articles of association are not only a contract, but the only

contract which brings any one within the rights of corporate existence. There can be no corporation without them, and no corporation differing from them. They are the rule and the origin of corporate life. And it is at least anamolous, if, when the statute has laid down so rigidly the terms of the only contract whereby there can be any corporation, it can permit persons who are not parties to it, to be brought within its rights and obligations by another agreement made in advance, and containing no provisions identifying it, and no authority empowering any one to execute it.

The articles are required to contain the name, the duration of corporate life, the amount of capital, the number of shares, the number and names of the directors, the route and length of the road, the names of five stock commissioners; and each subscriber is to sign his name, with his residence, and the number of his shares; whereupon, the persons *who have subscribed*, and those who may from time to time become stockholders, are made a body corporate.

The subscription set out in the declaration contains only one, and that the least important, of these elements,—that is to say, the proposed corporate name of a corporation as yet not in existence. It is only by showing that some written scheme existed, corresponding precisely with all the other elements, and that it was referred to sufficiently by using the name of the future corporation, that force could be given to the subscription for any purpose. And even then it could only be as an executory agreement, a breach of which might perhaps be actionable, but which could under no circumstances be merged in, or annexed to, a future agreement, to which the signer of the subscription was not in terms a party.

There is only one way in which the two papers could be made to help each other or be connected. If the original subscription contained a power of attorney authorizing the names of the subscribers to be signed, and if they were actually signed to the articles, the signature by attorney

would no doubt be valid. And it is on such subscriptions that some of the cases cited on the argument rest.—*Eastern P. R. R. v. Vaughan, 14 N. Y., 546; Stanton v. Wilson, 2 Hill's R., 153.*

An express reference to future incorporation, containing all the terms of incorporation and liability, and authorizing the incorporation to be made, might also be enough where the law does not require any further subscription to articles, or other personal intervention.—*Tonica Co. v. McNeely, 21 Ill., 71; Thomson v. Page, 1 Metc., 565; Richmondville Seminary v. McDonald, 34 N. Y., 379.*

But the authorities nowhere sustain the idea that any subscription can be enforced, for any purpose, unless for the precise thing agreed upon.—*Hallows v. Fernie, 3 Eq., (L. Rep.), 520; Stewart's Case, L. R., 1 Ch. Ap., 574.* It is valid, if at all, on the same grounds which sustain other contracts, and only so far as its terms supply all the elements of a mutual and binding agreement.

Doubtless a statute may supply any shortcomings, by defining such terms as shall be held sufficient to bind the parties. But there is nothing in the statutes of this state which contains any such definition; and this is, in my judgment, a strong argument against the claim that any subscription beyond the articles themselves was ever contemplated. It is not likely that while the articles are required to be so full in their statements, the terms of another paper practically equivalent would have been left entirely indefinite.

But, beyond all this, the statute evidently contemplates the publicity of all the steps taken, and the filing and recording, in some way and place, of all that is necessary to show—not only the terms, but the subscribers and directors and commissioners, of the proposed undertaking. And if the action of the parties subscribing is not to be found entirely in the articles themselves, there is, to say the least, a very strange oversight, which would create serious difficulties. The choice of directors and commissioners, as well

as the determination of lines and capital, is of the first importance to the security of the company. If persons can become entitled to rights in stock before the articles are signed, there must be some way of securing their right to vote upon and determine these matters. If they incur a statutory obligation they must receive an equivalent statutory right, which cannot be divested without their fault or consent. The question in this case is one of the liability of the subscriber. But questions may also arise, not merely whether a subscriber has a right to stock under the articles filed, but whether the articles themselves can be so drawn as to exclude his right to have them otherwise.

If twenty-five persons sign articles which conform in terms with the law, and take the other steps required, no one has ever supposed the corporation which they organize is not absolutely and completely beyond revision or change. Yet it would be entirely possible, under the construction asserted, for a very small minority of original subscribers, under preliminary articles, to absorb the entire capital, and fix all the terms of the corporate undertaking, in defiance of all the rest, who would thereby be precluded from any further interest in the corporation, and left to a private action for damages.

This cannot be the meaning of the statute. Rights once vested cannot be left to such peril. If the preliminary subscribers are recognized at all, the election of directors, and the framing of articles, must be absolutely under their control; and any action against their rights must be void. This statute does not contain any provision for calling meetings, or regulating the rights of voters, by number, by stock, or by majorities of any kind; it provides for no form or length of notice, and for no means of recording or preserving evidence of the doings of such meetings. The articles themselves are the only and conclusive evidence of what has been agreed upon. There can be no corporation records and no corporate powers in advance of their execution; and no incidents of the law of corporations can

attach to unincorporated subscribers. There is no common-law rule that could make any action of such parties governed by majorities. No party could be bound by any choice of directors or of commissioners, nor by any other act of the body of subscribers, without his personal assent.

I think the statute does not ignore these difficulties, and that the articles of association are the only documents recognized as originating or creating corporate interests in any subscriber; and that while parties may make their preliminary arrangements as formally or informally as they choose, their legal rights must depend entirely on the articles. It is not disputed that a corporation may be created where there has been no previous action, and where the articles themselves are the only medium for determining subscriptions or officers. If they were designed by law to be merely one out of several ways of securing subscriptions, there is every reason for holding that any other way would have been just as carefully guarded as they have been by the statute.

Such is the view of the New York court of appeals, where it was held, in *Poughkeepsie Plank R. Co. v. Griffin, 24 N. Y., 150*, that no previous subscription could be regarded, in determining whether a party was a stockholder. That case was decided under a statute in all important respects like ours, and is reasoned out very fully by Judge Denio. If any of the conflicting cases referred to in *Barbour's Reports* may be regarded as favoring a contrary doctrine, the decision of the higher court governs the courts of the state, and settles the construction, besides being worthy of respect for its reasoning. The principle of this case is supported by what I think is the clear weight of authority; for while there are many cases holding parties liable on subscriptions, I have discovered none, except the Indiana cases, under an analogous statute, that can fairly be regarded as maintaining the doctrine contended for by plaintiff in error. Those decisions are directly in point, but they are also almost entirely unrea-

soned, and rest, partially at least, on authorities which are distinguishable. In several states there are cases which appear to me entirely inconsistent with the result of the Indiana cases.—*Strasburg R. R. v. Echternacht, 21 Pa. St., 220 ; Thrasher v. Pike, etc., R. R., 25 Ill., 393 ; Chase v. Sycamore, etc., R. R., 38 Ill., 215 ; Perkins v. Union Buttonhole Co., 12 Allen, 273 ; Goff v. Winchester College, 6 Bush (Kentucky), 443.*

In most of the cases where subscribers have been held to be stockholders, their subscription has been made either on articles, or directly to a corporation or its commissioners after a charter has been granted, and preparatory to complete organization. I cannot see how under such circumstances it could be held otherwise.—See *K. & P. R. R. v. Palmer, 34 Me., 366 ; Penobscot R. R. v. Dummer, 40 Me., 172 ; Vermont C. R. R. v. Clayes, 21 Vt., 30 ; D. & A. R. R. v. Irick, 3 Zabriskie, 321 ; Buffalo & N. Y. R. R. v. Dudley, 14 N. Y., 336 ; Lake Ontario, Auburn & N. Y. R. R. v. Mason, 16 N. Y., 451.*

The cases of subscription by authority of a power in the previous original agreement, I have before referred to. And in *Williams v. Franklin Township Academical Association, 26 Indiana R., 310 ;* and *Chance v. Indianapolis & Westfield Gravel Road Co., 32 Ind., 472,* the rule laid down as to strict proof of organization according to the subscription would stand very much in the way of a recovery here.

I am therefore of opinion that Mr. Duncan did nothing which could entitle him to any rights as a stockholder, and that he was not in any way concerned with the corporation actually organized.

I think the judgment was right, and should be affirmed.