THE INTERNATIONAL FAIR & EXPOSITION ASSOCIATION OF DETROIT v. HIRAM WALKER.

*Corporations—Stock subscription—Liability of subscribers.*

After the passage of Act No. 6, Laws of 1889, authorizing the incorporation of associations for exposition and exhibition purposes, the defendant became a subscriber to a preliminary subscription paper by which the signers agreed to subscribe for and take stock to the amount set opposite their names in a corporation, which the agreement stated they believed should be organized, with a capital stock of at least $250,000, for the purpose of purchasing suitable grounds and erecting suitable buildings thereon, upon a plan similar to the Buffalo Exposition, which subscriptions were not to be binding unless the sum of $100,000 was subscribed within sixty days from the date of the agreement, which condition had been complied with

prior to the passage of said act. The corporation was duly organized with a capital stock of $500,000, of which over $250,-000 was subscribed. The articles of association were not signed by the defendant, nor did he subscribe for any of the capital stock, except as before stated, but he attended a meeting called to select a site after such incorporation, and voted stock to the amount of his subscription. Grounds were purchased, and the corporation accepted the subscriptions, and tendered to the defendant stock to the amount of his subscription, which was refused, as also payment of the amount subscribed, and the corporation brought suit to recover the same, on the trial of which a verdict was directed for the defendant; and in reversing the judgment entered thereon it is held:

a—That the object sought to be accomplished by the preliminary agreement was a lawful one, and the promises therein contained mutual; that the acts done and moneys expended were in reliance upon the original subscriptions, and that there can be no difficulty in enforcing the agreement at the common law; and that the case falls so squarely within *Railway Co. v. Duncan*, 28 Mich. 130, as to render a discussion of the objection that the subscription paper is not a contract, and that it has no legal force or effect, unnecessary.

b—Knowing the amount of the capital stock called for by the articles of association, and the amount subscribed, defendant attended the meeting and voted his stock, as before stated, by which action he must be held to have assented to the articles of association increasing the amount of the capital stock; and, having acted with the other subscribers, upon the assumption that they intended to proceed with the stock partially subscribed, defendant cannot now be heard to say, as a defense to this action to recover for his subscription, that the amount of the capital as provided for in the articles of association is greater than contemplated in his subscription, or that it has not all been paid in; citing *Proprietors v. Chapin*, 6 Cush. 50.

c—The objection that, under the act, no action on a stock subscription can be sustained except for any deficiency that may exist after a sale of the stock in the manner prescribed by the act, is without force. The action is not brought to recover against a stockholder as such, but upon the agreement to pay the sum subscribed by the defendant to the use of the corporation thereafter to be organized, and for the purposes named in the contract. The other subscribers have paid, and the moneys have been expended. The corporation has been organized as provided in the preliminary subscription, and it has

now become entitled to the money, and to maintain an action for its recovery upon the record as now presented.

Error to Wayne. (Hosmer, J.) Argued October 16, 1890. Decided December 5, 1890.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Marston, Cowles & Jerome,* for appellant, contended:

1. *Railway Co. v. Duncan,* 28 Mich. 130, settles the law in this State in favor of the validity of such a preliminary agreement as is relied on in this case.
2. It is, of course, clear that this subscription, to be binding, must have been accepted; citing *Railroad Co. v. Eslow,* 40 Mich. 222; *Parker v. Railroad Co.,* 33 Id. 23; *Underwood v. Waldron,* 12 Id. 73; and recognition of the subscription by the corporation is sufficient; citing *Corwith v. Culver,* 69 Ill. 502; *Railroad Co. v. McCormick,* 10 Ind. 499; *Music Hall Co. v. Carey,* 116 Mass. 471; and allowing defendant to vote his stock at the meeting of March 18 was alone sufficient, as it recognized and accepted the relation in which defendant had placed himself.
3. The remedy given by the act, of selling the stock, is merely cumulative; citing *Carson v. Mining Co.,* 5 Mich. 288; *Railroad Co. v. Tipton,* 5 Ala. 787 (39 Am. Dec. 344); *Railroad Co. v. Dudley,* 14 N. Y. 336.

*William Aikman (F. A. Baker,* of counsel), for defendant, contended:

1. The preliminary subscription paper is not a contract, and it has no legal force or effect. It is very clear that the act does not provide for or in any way contemplate that there shall be any preliminary subscription book or papers, hence the case is not within *Railway Co. v. Duncan,* 28 Mich. 130, as the opinion in that case was based entirely upon the provisions of the general railroad law, which were held to contemplate a preliminary subscription. *Plank-road Co. v. Griffin,* 24 N. Y. 150, is conclusive of this or ony other case where the act does not contemplate a preliminary subscription list, and the subsequent decisions of this Court are in accord with the views of Mr. Justice CAMPBELL, as presented in his dissenting opinion in *Railway Co. v. Duncan;* citing *Parker v. Railroad Co.,* 33

Mich. 23; *Railroad Co. v. Eslow*, 40 Id. 222; *Engine Co. v. Donovan*, 57 Id. 318; *Carmody v. Powers*, 60 Id. 26.

LONG, J. This is an action of *assumpsit* for a stock subscription.

The plaintiff is a corporation organized under the exposition and exhibition act of 1889, entitled—

"An act to provide for the incorporation of associations for the purpose of constructing, owning, controlling, and acquiring by lease, buildings for exposition and exhibition purposes." Laws of 1889, p. 6 (3 How. Stat. chap. 120*c*).

Before this act was passed, Messrs. Cottrell, Savage, and Goodfellow drew up and. circulated the following subscription paper:

"For the purpose of purchasing suitable grounds, erecting suitable buildings thereon of a permanent character for fair and exposition purposes, to be upon a plan similar to the Buffalo Exposition, and believing that a corporation, with a capital stock of at least $250,000, should be organized for such purpose, the undersigned agree to subscribe for and take stock in such a corporation for such purposes to the amounts set opposite our respective names: *Provided,* that at least the sum of $100,000 shall be subscribed within sixty days from the date hereof, in order to render our agreement hereto binding.

"*Dated Detroit, January 9, 1889.*"

About the time this subscription paper was started, it was considered desirable to secure legislation providing means for incorporating an association of the kind intended; and, in consequence of representations made to the Legislature, the act was passed which was approved February 13, 1889. It was by virtue of this act that the plaintiff received corporate existence. Subsequent to the passage of this act Mr. Walker (the defendant) subscribed his name to this paper for the amount of $5,000. Subscriptions to the amount of $100,000 were obtained on February 2, 1889, being within the 60 days mentioned in

the subscription paper. A total of about $255,000 was subscribed. On February 25 a notice was sent to each of the subscribers, including Mr. Walker, and signed by the committee who procured the subscriptions, as follows:

"A meeting of the subscribers to the Exposition Association will be held at the office of Judge Marston, in the Whitney block, Tuesday, February 26, 1889, at 2 o'clock P. M., for the purpose of organizing. Your presence is requested."

Aside from this notice, Mr. Walker was personally notified by one of the committee, and, in conversation with him about the meeting for the purpose of organizing, requested that one of his sons be put on the board of directors, which was subsequently done. In pursuance of this call, a meeting was held, articles of association adopted, and a board of directors and officers of the association named, by a number of the subscribers, representing about $100,000 of the stock. At this time, about $220,000 had been subscribed. On March 9, 1889, the following notice was sent to all the other subscribers, as well as the defendant:

"The subscribers to the Detroit International Fair & Exposition Association are requested to meet with the board of directors at Library Hall, Merrill block (up one flight), on Monday, the 11 inst., at 8 o'clock P. M., for the purpose of determining upon a location."

This notice was signed by the vice-president and secretary of the association. The meeting was held, and adjourned for one week, and Mr. Walker, with other subscribers, notified of the adjournment. At this second meeting, Mr. Walker was present, addressed the meeting, made motions, and voted his own stock and that of his sons, who were also subscribers. The total number of shares voted at this meeting was 2,110, or $211,000. The board of directors made a call for the entire capital subscribed, amounting to over $255,000, and proceeded to

acquire property and erect buildings at great expense, and held a fair and exposition upon a plan similar to the Buffalo Exposition. Mr. Walker never signed the articles of association, or subscribed for the stock; the only paper ever signed by him being the subscription paper first mentioned. Before the commencement of suit, stock was tendered to defendant by the company, and refused. On the trial in the Wayne circuit court, defendant introduced no evidence, and Mr. Walker was not called or examined as a witness. The court directed a verdict for the defendant. Plaintiff brings error.

The contention of defendant's counsel here is—

1. That the preliminary subscription paper is not a contract, and it has no legal force or effect.

2. That the articles of association provide for capital stock to the amount of $500,000, and, that amount not having been subscribed, the directors have no power to make calls.

3. That, under the act, no action on a stock subscription can be sustained except for any deficiency that may exist after a sale of the stock in the manner prescribed by the act.

It is contended by counsel for defendant, under their first proposition, that the act under which the corporation was organized does not provide for, or in any way contemplate that there shall be, any preliminary subscription; that the subscription paper itself is defective on each and every point required by the act to be set forth in the articles. It is not contended, however, but that the articles of association adopted conform to the statute, and that the plaintiff is duly and legally organized, but the contention is that Mr. Walker cannot be bound by the promise made in the preliminary subscription paper, to take and pay for the stock tendered by the corporation, because the act does not provide for such subscription, and that the defendant never signed the articles, or sub-

scribed for the stock, and therefore never became a stockholder.

The object sought to be accomplished by this preliminary agreement was a lawful one; the promises contained in this preliminary agreement were mutual; and the acts done and moneys expended were in reliance upon these original subscriptions; and there could be no difficulty in enforcing this agreement at the common law. It is true that the name of the corporation to be organized was not set out in the agreement, but it was the purpose of the subscribers to organize a corporation similar to the Buffalo Exposition, and it was so organized. It was said in *Peninsular Ry. Co. v. Duncan,* 28 Mich. 139, that—

"Good faith to his associates, whose action his promise may be supposed to have influenced more or less, and who kept on their part the promise mutually made, requires that he should keep his also."

The agreement sets out fully the purposes and objects for which the moneys were to be raised. It was to purchase grounds, erect suitable permanent buildings thereon for fair and exposition purposes, and to be on a plan similar to the Buffalo Exposition. Two hundred and fifty thousand dollars, at least, was to be the amount of the capital stock, and the only limitation or condition under which the amount subscribed by each should not be paid was that $100,000 should be subscribed within 60 days. This amount was subscribed within the time. The other parties who subscribed went forward in good faith to carry out the plan named in the agreement, and in reliance that the defendant would pay in the amount of his subscription. He stood by and saw the moneys being expended, the ground purchased, and buildings erected. He attended a meeting, and voted, not only the stock of his two sons, but voted his own, upon the question of the site. This subscription was accepted by the plaintiff,

and it has the power to give the stock subscribed for, and has offered to do so. I think this case falls so squarely within the case of *Peninsular Ry. Co. v. Duncan, supra,* that the first proposition of defendant's counsel needs no discussion. It is true that the statute under which the plaintiff in that case organized did require preliminary subscriptions, while the statute in the present case does not; but here, as in that case, the promises to pay the amount subscribed are mutual, and the agreement by the defendant to pay the $5,000 was relied upon by the other subscribers, and between them it was a valid contract, upon which, after organization, the corporation could maintain an action. If any question could arise as to the identity of the corporation organized as the one mentioned in the subscription paper, it must be held to have been waived by the defendant when he appeared at its meetings, and took part in the discussion of questions there raised, and voted his stock. The plaintiff was the person for whom the subscriptions were made, and had the undoubted right to bring the action.

Article 3 of the articles of association provides that the capital stock of the corporation is the sum of $500,000. It is therefore contended that, this amount not having been subscribed, the directors had no right to make calls. The argument is that, the whole amount not having been subscribed as contemplated by the articles of association, the interests of the subscribers might be materially affected. There would be great force in this contention if it were not for the fact that the original subscription paper which the defendant signed only contemplated that a corporation should be organized with a capital stock of $250,000, and his agreement was to pay the amount by him subscribed upon the sum of $100,000 being subscribed within the 60 days. More than the $250,000 was actually subscribed and paid in, and a call made upon him for

the amount of his subscription.    Knowing the amount of
capital stock called for by the articles of association, and
the amount subscribed, he attended the meeting and voted
his stock, and it must be held that by such action he
assented to the articles of association, increasing the
amount of the capital stock; and, having acted with the
other subscribers, upon the assumption that they intended
to proceed with the stock partially taken up, he cannot
now be heard to say, as a defense to this action to recover
for such subscription, that the amount of the capital as
provided for in the articles is greater than contemplated
in his subscription, or that it has not all been paid in.
This doctrine was recognized in *Proprietors v. Chapin*,
6 Cush. 50.

The third point—that, under the act, no action on a
stock subscription can be sustained except for any defi-
ciency that may exist after a sale of the stock in the man-
ner prescribed by the act—has no force whatever.    It is
true that the doctrine contended for is laid down in some
of the states, that the right to forfeit stock for non-pay-
ment of assessments does not imply a right in the cor-
poration to sue for such assessments, while in some other
of the states it is held that this remedy to forfeit the
stock is merely cumulative, and an additional remedy,
and does not take away the right to proceed in an action
of *assumpsit* on the contract.    Cook, Stock, § 124.    But
that is not the controlling question here.    The action is
not brought to recover against a stockholder as such, but
upon the agreement to pay the sum of $5,000 to the use
of the corporation thereafter to be organized, and for the
purposes named in the contract.    The other subscribers
have paid, and the moneys have been expended.    The
corporation has been organized as provided in the pre-
liminary subscription, and it has now become entitled to
the money, and to bring and maintain an action for its

recovery upon the record as now presented. The court below was in error in directing a verdict for the defendant.

The judgment of the court below must be reversed, with costs, and new trial ordered.

CHAMPLIN, C. J., and CAHILL, J., concurred. MORSE and GRANT, JJ., did nor sit.