# CHARLESTON.

## GREENBRIER INDUSTRIAL EXPOSITION *v.* SQUIRES.

Submitted January 23, 1895—Decided March 30, 1895.

CORPORATIONS—ESTOPPEL—PAYMENT OF STOCK SUBSCRIPTION.
   A party who takes part in the meeting of stockholders for the organization of a corporation under chapter fifty four of the Code, and votes therein as a stockholder for directors, and, when called upon by order of the directors, pays an assessment on his stock, can not deny the existence of the corporation when sued for his stock, and is liable therefor.

ALEX'R F. MATHEWS for plaintiff in error, cited 37 W. Va. 738; 1 Cook Stock, S. & Corp. Law, § 186, note 1; 6 S. E. Rep. 360; 37 W. Va. 753; 1 Cook Stock. S. & Corp. Law, § 97, note 12.

JOHN W. HARRIS for defendant in error, cited 1 Mor. Corp. § 74; 1 Cook. Stock S. & Corp. Law, § 52; 37 W. Va. 738;

83 Mich. 386; 40 Ill. 303; 54 Md. 161; 1 Cook Stocks S. & Corp. Law, p. 96 n.; 36 N. H. 545; 1 Mor. Corp. § 63; 1 Cook Stock S. & Corp. Law, p. 166; Id. § 55; 1 Mor. Corp. § 75; 21 W. Va. 172; 41 Me. 512; 21 Atl. 540.

BRANNON, JUDGE:

The Greenbrier Industrial Exposition, as a corporation, obtained a judgment in the Circuit Court of Greenbrier county against L. W. Squires, based on a subscription by him to its capital stock, and Squires obtained this writ of error.

Squires depends on the theory that there never was a legal corporation as to him, and that the subscription which he made to its stock is not binding. The formation of this alleged corporation was under chapter fifty four of the Code. The preliminary agreement constituting the first step and basis in the process of formation of the corporation was signed by Squires, but not acknowledged by him. The certificate of incorporation issued colorably under it. By the agreement the proposed corporation was to expire December 1, 1910, while the certificate of incorporation fixes the date of its expiration December 1, 1919. By reason of non-acknowledgment of agreement and variance between it and the certificate of incorporation, Squires would not be liable for his subscription made by said preliminary agreement, had he done nothing more, as this Court decided in *Industrial Exposition* v. *Rodes*, 37 W. Va. 738 (17 S. E. Rep. 305.) That statutory requirements as to preliminary steps in the organization of a corporation, to bind signers of the agreement, must be complied with, I refer to 1 Lawson, Rights, Rem. & Prac. §§ 436, 437; *Childs* v. *Smith*, 55 Barb. 45. The case of *Real Estate Co.* v. *Tower*, 161 Mass. 10 (36 N. E. Rep. 680) holds the right of one signing preliminary articles to withdraw before organization, and is a full discussion of how he may withdraw. See *Tavern Co.* v. *Burkhard*, 87 Mich. 182 (49 N. W. Rep. 562). This case, however, differs from the *Rodes Case* in its facts. Rodes did not acknowledge the agreement, though he signed it, and took no part in the organization of the company, did nothing but sign the agreement. Squires

signed the agreement, and, though he did not acknowledge it, he attended the organization meeting held by stockholders on 25th November, 1890, after the issue of the certificate, and voted as a stockholder for the directors then elected, and when, after the directors had made a call for the payment of ten *per cent.* on the stock, payment of the assessment was asked of him, he paid twenty dollars, the ten *per cent.* on his two shares of stock, and an account was opened on the books of the corporation, charging him with two shares of stock, and crediting him with the twenty dollars. In June, 1891, after further calls had been made upon stockholders, the assistant secretary addressed an official letter to Squires, informing him of the action of the directors incurring cost in the erection of buildings and race course, and asking payment of Squires' assessments, to which he wrote a reply, dated July 24, 1891, stating that his understanding was that he was only taking one hundred dollars of stock, and was only to pay fifty dollars, and that if that suited the directors, it was all right, and if not, he wished his money returned, and he would not pay the amount demanded. Thus he recognized the directory of the corporation, and that he had subscribed stock, and on a certain basis would pay as a stockholder, differing only as to amount of subscription, a matter outside of the question of his character as stockholder, and governed by the evidence bearing on it, the agreement. In the *Case of Rodes, supra,* it is stated incidentally—not as a point necessary to the decision in the case—that as to subscribers before the issue of the charter, those becoming so by executing the agreement preliminary, if they acquiesced in the mode of incorporation by subsequent acts by payment of installments, or otherwise treat it as a corporation, they can not set up that the corporation was not legally incorporated. I have taken pains, by examination of authorities cited and some others, to ascertain whether this position is correct, and I find it so. I find it laid down in the very recent work (1 Thomp. Corp. § 528) which, judging from the two volumes now out, will prove an invaluable work on that all-important subject. In *Rikoof* v. *Machine Co.,* 68 Ind. 388, it was held that payment of part of

stock upon assessment and promise to pay balance, "involved a clear admission of the full and complete organization of the corporation, and of the existence of every fact necessary to such organization." *Railroad Co.* v. *Bowser*, 48 Pa. St. 29, held that when, after subscription of stock under an act requiring a certain amount before incorporation, a later act lessened it, the change would not release the subscriber who voted at the organization and in the election of directors in right of his subscription. In *Bell's Appeal*, 115 Pa. St. 88 (8 Atl. 177) it was held that one who subscribed in view of and for purposes of organization, and paid part of the stock, was estopped from denying his liability. In the Supreme Court of Missouri, in *Hotel Co.* v. *Hunt*, 57 Mo. 126, the opinion says it is well settled that a defect in the certificate is not available to a stockholder, who, by his conduct, has waived the defect. The court also said: "The cases in regard to this point have all been examined, and they all agree that, where the subscription has been acquiesced in, either by payment of part of the subscription, or by becoming a director, or by attending meetings of stockholders, or by any other act indicating an acquiescence in the validity of his subscription, his defense, based on mere technical objections, will be disregarded. But the present case is peculiar, in that it shows nothing but the bare act of subscribing.  *  *  *  It appears that the ten *per cent.* required by the articles of association to be paid on subscription was never paid; that the defendant never took any part in the company's acts, except to subscribe." The Alabama court says: "A subscriber to stock may, like any other person, be estopped from disputing the *de facto* existence of a corporation, especially as against creditors, where he attends meetings of stockholders, or otherwise participates in the business of the company, thereby inducing others to act upon the faith of his admissions, to their prejudice." *Schloss* v. *Trade Co.*, 87 Ala. 414 (6 South. 360). In *Bridge Co.* v. *Chapin*, 6 Cush. 50, it is admitted that if a subscriber, knowing the whole capital had not been subscribed, but attended meetings, and participated in the business of the company, he would be estopped to deny his subscription. In *Association* v. *Walker*, 83

Mich. 386 (47 N. W. Rep. 338) attending meeting and voting stock was held to be a waiver of objection to an increase of stock. Presence of a party at organization of a company as a corporation, his election as president, and signature as such to a note is, in effect, an admission of the existence of the corporation, and that he was a stockholder. *Haynes* v. *Brown*, 36 N. H. 545. Payment of calls is an admission that subscription is binding. *Boggs* v. *Olcott*, 40 Ill. 304; *Musgrave* v. *Morrison*, 54 Md. 161. Such acts waive irregularity of subscription. *Railroad Co.* v. *McPherson*, 86 Am. Dec. 128 and note.

It is contended that a corporation was formed, but not the corporation contemplated. It is the same name, different only as to date of expiration from the agreement. We can not say this makes it another corporation. It is the same in all other aspects. "Even where articles of association are altered, or an attempt is made to transfer a subscription to a new company, the subscriber will be liable if he consented to the change, either by word or act indicating acquiescence." *Hammond* v. *Straus*, 53 Md. 1, 16; 1 Mor. Priv. Corp. § 63. "If any question could arise as to the identity of the corporation organized as the one mentioned in the subscription paper, it must be held to have been waived by the defendant when he appeared at its meetings, and took part in the discussion of questions there raised, and voted his stock." Opinion in *Association* v. *Walker*, 83 Mich. 393 (47 N. W. Rep. 338). There is not a shadow of evidence that any other corporation of anything like the same name existed, and it seems to me that it is utterly impossible to say that Squires, in his acts of participation, in fact meant any other, or that the law would say they are not referable solely to the corporation contemplated by the agreement which he signed. It was the same. The mere variance above spoken of between agreement and certificate did not, for the purpose of the question now spoken of, make it another company; it did not change identity. The frame, the business, the nature of the corporation made by the certificate are the same as those of the one contemplated by the article, so that Squires' acquiescence or waiver would surely apply to the corporation made

by the certificate.   Where, even, there is a material depar-
ture from the original plan, the cases agree that action such
as that of the subscriber in this case will bind him.   Note in
*Machine Co.* v. *Davis* (Minn.) 26 Am. & Eng. Corp. Cas. 69 (41
N. W. Rep. 1026).   The case of *Manufacturing Co.* v. *Hockaday,*
89 Va. 557 (16 S. E. Rep. 877) while holding that a material
change in the purposes of a corporation will release a stock-
holder, admits in the opinion that attendance on meetings,
or paying subscriptions, is a waiver of the objection.   The
rule of release, meet it where you will, is always stated with
this qualification.   *Railroad Co.* v. *Wilson,* 22 Conn. 435, is
strong to same point.   See, on this estoppel subject, *Glass Co.*
v. *Alexander,* 9 Am. Dec. 102.

But it is argued that when Squires did the acts of acqui-
escence he did not know of the variance.   The certificate of
incorporation was read aloud at the organization.   He says
he did not hear it read.   No one was charged with the duty
to inform him of it.   It was his own duty to look to that, and
means were open.   In *Railroad Co.* v. *Bowser,* 48 Pa. St. 29,
it was argued as here, that to bind the subscriber by acqui-
escence he must know of the change.   An instruction to the
jury that   if he did not know of it, he was not bound, was
held erroneous.   The opinion said that after the act of the
legislature reduced the capital, "the company was organized,
and the defendant voted in right of his subscription at the
organization and at the election of directors   Upon this state
of facts the court instructed the jury that unless the de-
fendant knew when he voted that the required subscription
to the capital stock had been reduced by law from one hun-
dred and fifty thousand dollars to twenty five thousand dol-
lars, the change released him from his subscription; that the
presumption of law would be that he knew of the change in
the charter, but that whether he did or not the jury should
determine.   In this, we think, there was error.   By voting,
the defendant admitted himself still a corporator, and the
general principle of law is that a corporator must be held
cognizant of his own charter.   There was no evidence to re-
but this legal presumption, even if it was capable of rebut-

tal. * * * The change in the charter could not relieve the defendant. After it was made he had contributed to involve his co-corporators in the venture, encouraged the creation of debts, and it was no longer for him to deny his liability to pay his own subscription."

We affirm the judgment.