HIRAM A. LUSK, TRUSTEE IN BANKRUPTCY, APPELLANT, V. ZACHARIAH H. RIGGS ET AL., APPELLEES.*

FILED JANUARY 6, 1904.  No. 13,225.

1. **Fraudulent Conveyance:** BURDEN OF PROOF.  Where a conveyance of real estate is presumptively fraudulent, the burden is on those

---

* Rehearing allowed.  See opinion, p, 718, *post.*

claiming under such conveyance to show the *bona fides* of the transaction. In such case, when the grantee attempts to show payment of a consideration for the conveyance, he must also show that the money used was his own.

2. **Incorporation: COLLATERAL ATTACK.** Where a collection of persons claim to have organized themselves into a corporation, the invalidity of their organization may be shown, even when questioned collaterally, by evidence that no articles of incorporation were filed as required by statute.

APPEAL from the district court for Clay county: GEORGE W. STUBBS, JUDGE. *Reversed.*

*J. L. Epperson, Charles H. Epperson* and *Ambrose Epperson,* for appellant.

*Thomas H. Matters, contra.*

DUFFIE, C.

On a former appeal the case was reversed and remanded with directions to the district court to try the issues made relating to the *bona fide* character of the conveyance of the W. ½ of the N. W. ¼ of section 33, township 5 N. of range 7 W. of the 6th P. M., it being alleged in the petition that a conveyance of said land to the defendant Edward R. Cornelison was fraudulent as to creditors. The former opinion contains a full statement of the facts. See 65 Neb. 258.

On the second trial it was shown that the land in controversy was conveyed by W. T. Cornelison and wife to the Fairfield Grocery Company, June 4, 1898, and that on December 14, 1898, the Fairfield Grocery Company, by W. T. Cornelison, manager, conveyed the land to Edward R. Cornelison. It further appears that on the date of said conveyance Edward R. Cornelison executed his note for $800, the alleged consideration for said conveyance, to the Fairfield Grocery Company, which note, with ten per cent. interest thereon, was payable thirty days after date; and about January 18, 1899, a draft for $800, said to have been purchased by R. W. Cornelison & Company, was drawn by

the Morrill & James Bank of Hiawatha, Kansas, in favor
of E. R. Cornelison, and by him indorsed to W. T. Corneli-
son and forwarded to Fairfield, Nebraska, in payment of
this note.   This draft was indorsed over to the Fairfield
Grocery Company by W. T. Cornelison, and by said com-
pany deposited to its account in the Citizens Bank of
Fairfield, Nebraska, and the proceeds thereof used in pay-
ment of accounts due to its creditors.   Upon this showing
the district court dismissed the petition of the plaintiff,
who has taken a second appeal.

On the former hearing it was held that the conveyance
of this land to the Fairfield Grocery Company, and by that
company to Edward R. Cornelison, was presumptively
fradulent, and that the burden was upon the defendants
to show the *bona fides* of the transactions.   We do not
think that this has been done.   It is true that Edward R.
Cornelison, the present holder of the legal title, executed
his note for $800 in payment for this land.   It is further
true that a draft payable to the order of Edward R. Cor-
nelison was sent to W. T. Cornelison in payment of this
note.   Whose money purchased the draft is not shown.
The written application for the draft is signed by R. W.
Cornelison & Company, and the bank undoubtedly charged
the amount of the draft to the account of that company;
but there is no evidence whatever to show that the money
with which the draft was purchased had not in fact been
furnished by W. T. Cornelison or the Fairfield Grocery
Company, or, if purchased with the money of R. W. Cor-
nelison & Company, that they had not been reimbursed for
the amount.   The note in payment of which the draft was
sent drew interest at ten per cent. per annum, and no
attempt is made to show that interest due upon the note
was paid.   The vice-president of the Morrill & James Bank
of Hiawatha testified that shortly after this transaction,
and on March 12, 1900, W. T. Cornelison deposited in
that bank the sum of $1,800, and this, together with the
fact that but three days prior to this deposit he had re-
ceived his discharge in bankruptcy, is a circumstance

giving rise to the suspicion that he might have had money in that bank in the name of his father, or a firm with which his father was connected, prior to that date, and was the party who, in fact, furnished the money for the purchase of the draft. Another suspicious circumstance is the fact that Edward R. Cornelison, although summoned to give his deposition at the same time that the deposition of the vice-president of the Morrill & James Bank of Hiawatha was taken, gave notice by his attorney that he refused to appear and testify in obedience to the subpœna served upon him. It has long been a rule in this state that, when transfers like these in question have been made between near relatives, the burden is on the defendants to show a sufficient consideration and good faith in the transaction. *National Bank of Commerce v. Chapman,* 50 Neb. 484; *Plummer v. Rummel,* 26 Neb. 142; *Knudson v. Parker,* 3 Neb. (Unof.) 481; *Bartlett v. Cheesbrough,* 23 Neb. 767. That a note was given by Edward R. Cornelison in consideration of the conveyance to him, and that said note was taken up by a draft drawn to Edward R. Cornelison, is plain enough, but the material and important question, who furnished the money that purchased the draft, is a question upon which the record is entirely silent. The burden being upon the defendants, it was incumbent upon them to show that the money received for the purchase of this land was the money of Edward R. Cornelison, and upon this point there was an entire failure.

One other question needs consideration. Appellant insists that the Fairfield Grocery Company was not legally incorporated and authorized to transact business, for the reason that its articles of incorporation were never filed in the office of the secretary of state. Section 126, chapter 16, Compiled Statutes, 1901 (Annotated Statutes, 4119), provides, among other matters:

"Every corporation, previous to the commencement of any business, except its own organization, when the same is not formed by legislative enactment, must adopt articles of incorporation and have them filed in the office of the

secretary of state and recorded in a book kept for that purpose, and domestic corporations must also file with the county clerk in the county where their headquarters are located," etc.

It is insisted that there is no evidence that the articles were not duly filed with the secretary of state, and that a certificate from the secretary to the effect that no articles of the kind were on file in his office is not competent evidence of that fact. This we must concede, but the articles themselves were introduced in evidence and, while they show a filing in the office of the county clerk, they do not bear a certificate of the secretary of state to the effect that they were filed in his office. It is well known that the secretary of state files and retains the original articles and, when occasion requires, furnishes the company, or other parties who may desire, with certified copies thereof. This proceeding relating to the conduct of a public office is a matter which needs no proof, as the wording of the statute requires that method to be adopted. The fact, then, that the articles offered in evidence fail to show that they had been filed in the office of the secretary of state is evidence conclusive that no filing had been made there. Until such filing was had the company, under the terms of our statute, was not authorized to transact business. Thompson in his Commentaries on the Law of Corporations (vol. 1, sec. 219), says:

"It has already been seen that a number of individuals, by the mere act of uniting and calling themselves a corporation, can not constitute themselves such, but that a corporation can only be created by the sovereign power. It will hereafter be pointed out that the principle which validates irregularities in the organization of corporations, when their corporate existence is questioned in collateral proceedings, applies only in cases where the corporation might have existed. If we attend to these principles, we shall see that a corporation can not be deemed to exist, even *de facto,* where the adventurers never had any charter at all. *  *  *  It must follow, from a consider-

ation of these premises, that where a collection of persons claim to have organized themselves into a corporation under a general law, their claim will not be good, even when questioned collaterally, provided they file *no articles* of association at all; and such is the adjudged law."

In *Abbott v. Omaha Smelting & Refining Co.*, 4 Neb. 416, it was held that until articles were filed as required by statute, a corporation *de facto* did not exist, and this ruling was followed in *Capps & McCreary v. Hastings Prospecting Co.*, 40 Neb. 470. And the rule is firmly established in this state that a corporation has no legal existence until the statute has been complied with in filing with the proper officers the articles of incorporation. We think, therefore, that the Fairfield Grocery Company never had any legal existence and that such fact may be shown in any controversy where the matter is brought in question. We recommend that the judgment of the district court be reversed and the cause remanded for another trial.

LETTON and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for another trial.

REVERSED.

THE following opinion on rehearing was filed January 5, 1905. *Reversed:*

1. **Evidence.** Evidence examined, and *held* not sufficient to sustain the judgment of the trial court.

2. **Corporation:** COLLATERAL ATTACK. Where the law authorizes a corporation and there has been an attempt in good faith to organize, and the requirements of the statute have been colorably complied with and corporate functions thereafter exercised, there exists a corporation *de facto*, which can not ordinarily be called in question collaterally. *Haas v. Bank of Commerce*, 41 Neb. 754, followed and approved.

3. **Overruled.** Paragraph 2 of the syllabus of the original opinion in this case examined, and overruled.

OLDHAM, C.

An opinion by Commissioner DUFFIE was filed in this cause. *Ante,* p. 713. In this opinion there is a careful and accurate statement of all issues arising under the pleadings and proofs, consequently no additional statement is requisite to the conclusion about to be reached. We find, on a reexamination of the evidence contained in the bill of exceptions, that the conclusion reached by the learned commissioner in support of the first paragraph of the syllabus of the original opinion is well founded and should be adhered to, and as this will necessitate a retrial of the cause in the court below, we deem it well to further examine the doctrine announced in paragraph 2 of the syllabus of the former opinion. In this latter paragraph it is held, in substance, that, where a collection of persons claim to have organized themselves into a corporation, the invalidity of their organization may be shown even when questioned collaterally, when no articles of incorporation have been filed with the secretary of state. In support of this conclusion the learned commissioner says:

"The articles themselves were introduced in evidence and, while they show a filing in the office of the county clerk, they do not bear a certificate of the secretary of state to the effect that they were filed in his office."

The question then arises, does the failure of a domestic corporation, organized under the general laws of the state, to file its articles of incorporation with the secretary of state, when it has filed them in the office of the clerk of the county in which its place of business is situated, render its proceedings a nullity for the purpose of transacting business other than its own organization? Section 126, chapter 16, Compiled Statutes (Annotated Statutes, 4119), which is quoted in the original opinion, provides in substance that every corporation, when the same is not formed by legislative enactment, shall adopt articles of incorporation and have them filed in the office of the secretary of state, and it also provides that domestic corpora-

tions .must also file them with the county clerk in the county where their headquarters are located. This section of the statute was adopted in 1897 as an amendment to section 126, chapter 25, Revised Statutes, 1866, which only provided for the recording of the articles with the county clerk in the county in which the business of the corporation is to be transacted. Section 132, chapter 25 of the Revised Statutes of 1866, however, has never been amended or repealed by direct enactment and remains as section 132, chapter 16, Compiled Statutes (Annotated Statutes, 4124), and this section provides that any corporation formed without legislative enactment may commence business as soon as its articles of incorporation are filed with the county clerk of the county, as required by this subdivision, and shall be valid if a copy of its articles be filed in the office of the secretary of state, etc. This latter section of the statute is now in full force and effect, unless repealed by implication by the enactment of section 126, *supra*, and if repealed by implication it must be because of a clear and irreconcilable conflict between the two sections. If the question of the conflict of these sections of the statute and the consequent repeal of section 132 by the adoption of section 126 had been raised in a direct attack by a quo · warranto proceeding, instituted by the state to prevent the corporation from transacting business, other than its organization, without filing its articles with both the county clerk and the secretary of state, we would consider the question one worthy of grave consideration, for in such proceeding the corporation would be compelled to show its right *de jure* to transact business; but when collaterally attacked, as in the case at bar, it is only necessary to show a *de facto* existence.

Prior to the amendment of 1897 it was held by this court that the filing of articles with the county clerk is a condition precedent to the right to do business other than the organization of the company. *Abbott v. Omaha Smelting & Refining Co.*, 4 Neb. 416; *Capps & McCreary v. Hastings Prospecting Co.*, 40 Neb. 470, 477. These

cases go to the question that the mere adoption of articles of incorporation, without filing the same as required by statute, gives no right as even a *de facto* corporation to transact business; but in the case of *Haas v. Bank of Commerce,* 41 Neb. 754, where the right of a corporation was collaterally attacked, IRVINE, C., speaking for the court, said:

"Where the law authorizes a corporation, and there has been an attempt in good faith to organize, and corporate functions are thereafter exercised, there exists a corporation *de facto,* the legal existence of which can not ordinarily be called in question collaterally. It would be intolerable to permit in any civil action, to which such a body was a party, an inquiry into the legal right to exercise corporate functions—a right which it is for the state alone to question in appropriate proceedings for that purpose. On this there is a substantial unanimity in the authorities. Among other cases may be cited, *Williamson v. Kokomo Building & Loan Fund Ass'n,* 89 Ind. 389; *Pape v. Capitol Bank,* 20 Kan. 440; *Lessee of Frost v. Frostburg Coal Co.,* 24 How. (U. S.) 278; *Society Perun v. Cleveland,* 43 Ohio St. 481. The evidence here shows that articles of incorporation were adopted, acknowledged and filed for record in the office of the county clerk, and that the bank acted under such articles and conducted business thereunder for some years. This was sufficient evidence of a corporate existence. *Abbott v. Omaha Smelting & Refining Co.,* 4 Neb. 416; *Merchants Nat. Bank v. Glendon Co.,* 120 Mass. 97."

It seems to us, in view of the apparent existence of the two sections of the statute, it may be said that the Fairfield Grocery Company has colorably complied with the requirements of the law, and this is all that is necessary to show to constitute it a *de facto* corporation, and secure it against a collateral attack. 1 Clark & Marshall, Private Corporations, sec. 80, p. 227, and authorities there cited.

We therefore conclude that the second paragraph of the syllabus of the original opinion should be overruled, and

that the cause should be reversed and remanded because of the insufficiency of the testimony to sustain the judgment as set forth in the first paragraph of the original opinion.

AMES and LETTON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the second paragraph of the syllabus of the original opinion is overruled, and the cause is reversed and remanded because of the insufficiency of the testimony to sustain the judgment as set forth in the first paragraph of the original opinion.

REVERSED.