## UNITED STATES v. DELATOUR.

(Circuit Court of Appeals, Eighth Circuit. July 27, 1921.)

No. 5563.

1. **Public lands ⊜120—Clear and convincing evidence required for cancellation of patent for fraud or mistake.**

   A mere preponderance of evidence is insufficient to justify a chancellor in avoidance of a patent for fraud or mistake, which may only be done on clear, unequivocal and convincing proof of such fraud or mistake.

2. **Appeal and error ⊜1009(3)—Findings of trial court on conflicting evidence presumptively correct.**

   Where a court of equity has considered conflicting evidence and made its findings and decree therein, they must be deemed presumptively correct by the appellate court, which may lawfully reverse them only for obvious error of law, or some serious mistake of fact, in the consideration of the evidence.

3. **Corporations ⊜29(2)—As against a collateral attack organization held sufficient to validate deed to corporation.**

   Under Cobbey's Ann. St. Neb. 1909, § 4119, providing that, "Every corporation, previous to the commencement of any business except its own organization, * * * must adopt articles of incorporation and have them filed in the office of the Secretary of State, * * * and domestic corporations must also file with county clerk," as construed by the Supreme Court of the state to authorize a domestic corporation to do business when its articles have been filed with the county clerk, a deed conveying land to a corporation, signed after the filing of its articles with the county clerk and delivered on the day they were filed with the Secretary of State, *held*, as against collateral attack, valid and effective as a deed of a de facto corporation.

4. **Public lands ⊜120—Evidence held insufficient to warrant cancellation of patent for fraud.**

   Findings of the trial court that the evidence was insufficient to sustain claims of the government that a conveyance of lands by defendant was fraudulent, and made for the purpose of qualifying him to make entry of public land, and that he made and presented false affidavits of residence for the purpose of deceiving the officers of the land office, *held* justified.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Suit in equity by the United States against Samuel P. Delatour. From the decree, the United States appeals. Affirmed.

Thomas S. Allen, U. S. Atty., of Lincoln, Neb., and Frank A. Peterson, Asst. U. S. Atty., of Omaha, Neb., for appellant.

J. G. Beeler, of North Platte, Neb. (Beeler & Crosby, of North Platte, Neb., on the brief), for appellee.

Before SANBORN and STONE, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. On January 4, 1909, the defendant, Samuel P. Delatour, filed in the land office in North Platte, Neb., his application under the Kinkaid Act of April 28, 1904, 33 Stats. 547, 5 Comp. Stats. § 4576, and the Homestead Act, section 2289, U. S. Rev. Stats., 5 Comp. Stat. § 4530, to enter 640 acres of arid land in the

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

state of Nebraska as his homestead. He made his final proof before the register and receiver of the proper land office of his compliance with these laws on October 9, 1912, and, on April 18, 1913, the United States issued to him a patent for the land. On August 29, 1917, the United States filed a bill in equity against him in the court below to avoid this patent for alleged fraud, in that, when he applied to enter the land, he made a false affidavit that he was not the proprietor of more than 160 acres of land in any state or territory, and that he made his application honestly and in good faith to obtain a home for himself; in that on October 9, 1912, when he made his final proof, he made a false affidavit and presented false affidavits of witnesses, to the effect that he established his residence upon the land in controversy in March, 1909, and had thereafter continuously resided thereon, except for short periods of absence, and had placed improvements of the value of $800 upon the land; and in that by means of these affidavits he intentionally deceived the officers of the land office, and induced them to recommend the issue and to issue the patent to him, and thereby to defraud the United States. The defendant in his answer to this bill denied these charges. The issues thus formed were tried, and the court below found for the defendant thereon and dismissed the bill. From this decree of dismissal the complainant has appealed.

The evidence in this case was conflicting. The court below heard and considered it, and upon it made its findings and founded the decree which this appeal challenges. The rules of equity by which that challenge must be tried, are these:

[1] A mere preponderance of evidence is insufficient to justify a chancellor in the avoidance of a contract, a fortiori, a patent to land for fraud or mistake. It is indispensable to such an avoidance that the evidence of such fraud or mistake shall be "clear, unequivocal, and convincing"; that it shall be "that class of evidence which commands respect, and that amount of it which produces conviction." Maxwell Land-Grant Case, 121 U. S. 325, 381, 7 Sup. Ct. 1015, 1029 (30 L. Ed. 949); United States v. Budd, 144 U. S. 154, 161, 162, 12 Sup. Ct. 575, 36 L. Ed. 384; that it shall be "plain and convincing beyond reasonable controversy," Thallmann v. Thomas, 111 Fed. 277, 282, 49 C. C. A. 317, and the cases there cited.

[2] Again, where a court of equity has considered conflicting evidence and made its findings and decree thereon, they must be deemed by the appellate court to be presumptively correct, and unless an obvious error of law, or some serious mistake of fact has been made in the consideration of the evidence and the decision of the case, its findings may not be lawfully disturbed. Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; North American Exploration Co. v. Adams, 104 Fed. 404, 408, 45 C. C. A. 185. Let us test the two questions which this appeal presents by these rules.

The first question is, Did the evidence so clearly prove beyond reasonable controversy (a) that the defendant was the proprietor of more than 160 acres of land in any state or territory (Comp. Stats. § 4530) on January 4, 1909, (b) that he made a false affidavit that he was not such a proprietor on that day in order to deceive the officers of the land

office and to defraud the United States, and that thereby he succeeded in so deceiving the former and defrauding the latter that the finding and decree of the court below to the contrary ought to be reversed? The established facts relevant to this issue are that from 1884 to the time when this fraud is alleged to have been committed the defendant had been and was a ranchman, engaged in raising stock on the arid lands he owned in Nebraska; that he had built in 1889, and thereafter until 1908 had lived in and occupied a house on his ranch; that in 1887 his wife had died and he had never married again; that his house was near the land here in controversy; that in 1908 the defendant was living in his ranch house, and had become the owner of 4,680 acres of semiarid lands, on which he and three of his full grown sons were maintaining a herd of cattle and raising them and cultivating some parts of this land that they had irrigated. The lands in controversy adjoined the lands owned by the defendant. He testified that in this year 1908 he was very desirous of keeping his sons upon the 4,680 acres of land he owned, to give them an interest therein and thereby secure their continued assistance in carrying on his business, and that to accomplish this purpose he and his sons organized the La Tour Land & Cattle Company, a corporation, on March 27 and 28, 1908, and that he conveyed to it all the land he owned on April 13, 1908. The articles of incorporation of this company were executed by the defendant and his sons on March 27 and 28, 1908. They were filed in the office of the proper county clerk on April 13, 1908, and on that day the defendant made a warranty deed of all the lands of which he was the proprietor to the La Tour Land & Cattle Company. On January 4, 1909, the articles of incorporation of this company were filed in the office of the Secretary of State of Nebraska, and on January 4, 1909, the defendant filed his application and made his affidavit to enter the land in controversy as his Kinkaid homestead.

[3] Counsel for the plaintiff contend that the defendant never was qualified to enter these lands as such a homestead, because (1) the La Tour Company failed to become a corporation qualified to take the title thereto by reason of the failure to file its articles with the Secretary of State until long after the defendant's deed to it was made, and (2), because the formation of the corporation and the conveyance of the 4,680 acres were fraudulent devices of the defendant to evade the statutory provision that disqualified any one who was the proprietor of more than 160 acres of land from entering the Kinkaid homestead. In support of their first reason for this contention they cite the provision of the Nebraska statutes that—

"Every corporation, previous to the commencememnt of any business, except its own organization, when the same is not formed by legislative enactment, must adopt articles of incorporation and have them filed in the office of the Secretary of State and recorded in a book kept for that purpose, and domestic corporations must also file with county clerk, in the county where their headquarters are located." Cobbey's Annotated Statutes of Nebraska, 1909, § 4119.

But the Supreme Court of Nebraska, whose interpretation of the statute of its state controls in the absence of any constitutional or com-

mercial question, has held that the filing of the articles of a domestic corporation with the proper county clerk under this statute, although they are not yet filed with the Secretary of State, qualifies the corporation to do business as such, and renders its transactions as a de facto corporation impervious to collateral attack. Lusk v. Riggs, 70 Neb. 713, 97 N. W. 1033. In the case in hand the articles of incorporation were filed with the county clerk more than six months before the defendant made his deed, and they were filed with the Secretary of State on the day that deed was delivered. Under this state of facts no error of law is discovered in the conclusion of the court below, that, as against a collateral attack like that here made, the corporation was qualified to take, and that the defendant was divested of title to his lands by his deed of April 13, 1908.

[4] In support of their claim that the incorporation of the La Tour Company and the conveyance of the 4,680 acres of land were fraudulent devices of the defendant, conceived to evade the inhibition of the taking of a homestead by a proprietor of more than 160 acres, and fraudulently to acquire this Kinkaid homestead, counsel for the plaintiff call attention to evidence to the effect that the defendant, after the corporation was organized, held the largest interest in and managed its business, that when a mortgage which he had made on this land before the corporation was organized came due, he, as an individual, gave a mortgage upon the land after it had been conveyed to the corporation; that he made other mortgages thereon in the same way; that he paid the taxes on it by his individual check; that $5,000, which the defendant's son Eugene paid into the corporation for his interest in it when it was organized, went into the defendant's individual bank account; that he paid this $5,000 and 10 per cent. interest back to Eugene in 1911, when his sons withdrew from the business and the corporation; that the corporation never issued any certificates of stock or had any checking account, or kept any books beyond a record of the organization of the company and the election of its officers; and that on December 26, 1912, after the defendant on October 9, 1912, had made his final proof for the Kinkaid homestead, the La Tour Company conveyed the 4,680 acres to the defendant. But, if the defendant had conveyed this 4,680 acres to the La Tour Company to qualify himself to take the Kinkaid homestead he would have been likely to have been very sure to see that certificates of stock were issued by the corporation to the sons who became interested therein and to himself, that after such conveyance the mortgages on the land were made and the taxes were paid by the corporation, and that books were kept to show these transactions. It was not unnatural that the $5,000 which Eugene paid to the corporation for his interest therein should have gone into the personal account of the defendant, for that $5,000 was paid for stock in or for an interest in the property of the corporation which it had received from the defendant, and for which it owed him the $5,000. The defendant testified that when the corporation was formed and when he conveyed the 4,680 acres to it on April 13, 1908, he did not have in contemplation filing upon the lands here in controversy; that his purpose was to interest his sons and give them a share in the land

conveyed so that they would stay with him and assist him to carry on the business; that after the conveyance to the corporation he kept the general management of that business, his youngest son stayed and worked with him at the ranch house, his eldest son lived on and operated the north ranch, his second son, the irrigated farm—both parts of the 4,680 acres, and Eugene, who was unable to perform manual labor, invested his $5,000 and was elected county clerk; that the operation of the ranch in this way proved unsuccessful, and in 1910 and 1911 the boys all notified him that they were dissatisfied, and withdrew from the business and the property, and after that in 1912 the corporation conveyed it back to him. This account of these transactions which the defendant gave is not improbable. The lands which the defendant owned and conveyed were semiarid; it was impossible to cultivate and raise crops upon them without irrigation; they were generally useful, if at all, for grazing purposes only. If the defendant on April 13, 1908, had made the deed to qualify himself to take the Kinkaid homestead, he probably would not have waited until January 4, 1909, before he attempted to apply for it, and when all the evidence on this subject is thoughtfully considered it fails to convince that the court below made any mistake in its finding that it was insufficient to justify it in concluding that the defendant with intent fraudulently to evade the prohibition of the statute and to acquire the Kinkaid homestead by deceit and fraud, formed the La Tour Corporation or conveyed the 4680 acres to it. On the other hand, this evidence impresses the mind with the view that the defendant had no such purpose or intent in the transactions which have been discussed.

The second question is, Did the evidence in this case so clearly prove beyond reasonable controversy that with intent to deceive the officers of the land office and to defraud the United States of the lands in controversy the defendant, on October 9, 1912, made a false affidavit and presented false affidavits of witnesses to the effect that he established his residence upon the land in controversy in March, 1909, that he had thereafter continuously resided thereon except for short periods of absence, and that he had placed improvements of the value of $800 thereon, and did such false affidavits deceive the officers of the land office, induce them to issue the Kinkaid patent to the defendant, and defraud the plaintiff of the land so patented? The testimony that conditions the answer to this question, as is not unusual in cases of this character, is conflicting. Counsel for the respective parties have quoted and pressed upon our attention the parts of it favorable to their respective clients, and all the testimony upon this subject has been carefully read and considered. It is so voluminous that a repetition or review of it here would serve no good purpose. If the answer to the question now under consideration were to be drawn from the evidence for the plaintiff alone perhaps it might be in the affirmative. If it were to be drawn from the evidence for the defendant alone a negative answer could not well be denied. The result is that when all the testimony is taken together, it fails to persuade that the court below made any serious mistake in its conclusion, it failed to present that "clear, unequivocal, and convincing" evidence of "that class which commands respect and of

that amount which produces conviction" required to prove that the defendant fraudulently made false affidavits regarding his compliance with the requirements of the Homestead Laws with intent to deceive the officers of the land office and to defraud the United States, and the decree below must be affirmed.

It is so ordered.