JOHN WHITSITT

*v.*

TRUSTEES OF PREËMPTION PRESBYTERIAN CHURCH.

*Filed at Ottawa May 19, 1884.*

1. CONSIDERATION—*for agreement to convey a lot for church purposes.* A promise or agreement by the owner of land that if a building should be erected thereon for religious worship, he would, as soon as a legal organization of the church could be effected, convey such church and the lot of land on which it was built, and the church is so erected with moneys raised on subscriptions and donations, and a religious body organized and incorporated, is not a mere naked promise, but is supported by a sufficient consideration.

2. STATUTE OF FRAUDS—*parol agreement to convey a lot for church purposes—what will take the case out of the statute.* In pursuance of a verbal agreement of the owner of a lot of ground, to convey the same when a building should be erected thereon, and dedicated to religious worship, and the society incorporated, a subscription was raised, and the money so procured was expended in the erection of the building. It was *held,* that such expenditure was tantamount to the payment of the consideration, which, in connection with the taking of possession and making improvements, took the case out of the Statute of Frauds.

3. POSSESSION—*of acts indicating in whom is the possession of property used for church purposes.* A church building was erected upon a lot

of ground on the verbal promise of the owner of the lot to convey the same to the church authorities on a certain condition. A religious society was formed, who used the premises for religious services, and for Sunday schools. The keys of the church were retained by the person so holding the legal title, and his son, the former making repairs on the building at his own expense, fencing off the church lot from his own ground at his own expense, and paying the taxes on the church lot, which was taxed to him with the other land he owned adjoining. It appeared that the owner, during all this time, was a ruling elder in the church, and his son was janitor: *Held*, that the retaining of the keys might be referred to the official capacity of the owner of the lot and his son, and that these facts were not sufficient to show possession in him, and that such acts were not inconsistent with the full possession and enjoyment of the use, by the society, of the church building.

4. SUBSCRIPTIONS—*when binding.* Mutual subscriptions for a common object, where money has been expended in the accomplishment of that object, are binding, and such a subscription is a valid contract.

5. SAME—*made in anticipation of an incorporation.* Where subscriptions have been made in anticipation of the formation of a corporation, and the corporation is afterward formed, payment of such subscriptions is enforceable in the name of the corporate body.

6. SAME—*payment in addition to amount subscribed—treated as a further subscription.* A person, for the purpose of aiding in the erection of a building for religious worship, and to form a church society at a certain place, prepared a subscription paper for the purpose of obtaining the necessary moneys, payable to himself, in which he subscribed $1000. He collected the subscriptions, and built the church mainly from such subscriptions, he putting in additional means of his own to complete the same and for repairs afterward. He stated afterward, to the church officials, the cost of the church, and that it was all paid for. It was *held*, that what he expended in building and repairing the church, in addition to his formal subscription, should be regarded as a gratuity, as much as the $1000 which he had subscribed.

7. RELIGIOUS SOCIETY—PARTIES—*to enforce contracts.* The trustees of an incorporated church, as the representatives of all the members of a church, may, in the corporate name, enforce agreements made for the use and benefit of the society before its legal organization. On a bill to specifically enforce such an agreement, it is immaterial with whom the agreement was made, and in that regard the fact need not be proved as alleged; and it is not necessary to state the names of such persons, as the agreement is enforceable in the corporate name.

8. LACHES—*as a bar to equitable relief. Laches* is not available as a defence to a bill for the specific performance of an agreement to convey land, where the complainant has been in the continued possession of the premises.

Appeal from the Circuit Court of Mercer county; the Hon. Geo. W. Pleasants, Judge, presiding.

Mr. John C. Pepper, for the appellant:

A verbal promise to make a gift is utterly void. To this rule there are no exceptions. *Pope* v. *Dodson,* 58 Ill. 360.

So long as such promise is unfulfilled there is a *locus penitentia,* and the promised donee has no right of action. *Hoig et al.* v. *Adrian College et al.* 83 Ill. 267.

The alleged promise stands upon the same footing as a verbal sale of lands, and is within the Statute of Frauds. To enforce it the complainants must disclose facts taking the case out of the statute. *Walton* v. *Walton,* 70 Ill. 142; *Wadhams* v. *Gay,* 73 id. 415; *Cronk et al.* v. *Trumble,* 66 id. 428; *Taylor* v. *Staples,* 6 Am. Rep. 556; Fry on Specific Per. 64; Browne on the Statute of Frauds, par. 472–476; *McClellan* v. *Kellogg,* 17 Ill. 498.

In order to take a parol gift or parol sale of lands out of the Statute of Frauds, the person seeking its enforcement must perform all his part of the contract. Something must be done by the donee. Browne on Statute of Frauds, sec. 497.

The act or acts of performance must be done by the complainant. Ibid. sec. 453.

The donee in possession must have made some sacrifices. Ibid. 488, 490.

The acts of performance must have been done in pursuance of the promise, contract or gift, and in execution and performance thereof. Ibid. 454, 457; Fry on Specific Per. 384; *Cronk et al.* v. *Trumble,* 66 Ill. 428.

Messrs. Bassett & Wharton, for the appellees:

Whitsitt, by taking a subscription to himself to build a church, and collecting the same, took upon himself a written trust, by the subscription paper, to use the funds for the common benefit of the subscribers. *Cross* v. *Pinckneyville*

*Mill Co.* 17 Ill. 54;   *T. and P. R. R. Co.* v. *McNeely,* 21 id. 71;   *Snell* v. *Trustees M. E. Church,* 58 id. 290;   *Willard* v. *Trustees M. E. Church,* 66 id. 55;   *Johnston* v. *Ewing University,* 35 id. 518.

In 1874 trustees were elected, and the present trustees were elected in June, 1880.   They represent the interests of all the church members as to church property, and succeed to all the rights of the former members of the church.   *Ferraria* v. *Vasconcellos,* 31 Ill. 54;   *Griswold* v. *Trustees,* 26 id. 41; Fry on Specific Per. sec. 141.

While the law requires that a contract must be clearly proved to take a case out of the Statute of Frauds, still, an implied contract may be sufficient.   Fry on Specific Per. secs. 223–228;   Addison on Contracts, secs. 30, 1399, 1401;   *Chambers* v. *Rowe,* 36 Ill. 171;   *Downing* v. *Wright,* 51 id. 363; *Schwarz* v. *Schwarz,* 26 id. 81.

A contract need only be substantially proved as alleged. *Ramsey* v. *Liston,* 25 Ill. 114.     .

The consideration was sufficient.   *Kurtz* v. *Hibner,* 55 id. 514;   *Stone* v. *Great Western Oil Co.* 41 id. 86;   *Warren* v. *Warren,* 105 id. 568;   *Price* v. *School Directors,* 58 id. 452.

Under the relations of John Whitsitt in the church, the society, church or organization had all the possession that was necessary and consistent with the circumstances.   *Warren* v. *Warren,* 105 Ill. 568;   *Brooks* v. *Bruyn,* 24 id. 372; *Hubbard* v. *Kiddo,* 87 id. 578.

*Laches* is set up in the answer, but it is not available in such a case as this, where the complainants were in possession. *Mills* v. *Lockwood,* 42 Ill. 118;   *Wilson* v. *Byers,* 77 id. 76.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

The bill in this case, for a specific performance, sets out, substantially, that William Hammond and four other named persons are "trustees of the Preëmption Presbyterian Church;"

that on or about June 2, 1866, William Hammond and others, being desirous of erecting a Presbyterian church building and organizing a Presbyterian church or society, entered into a verbal agreement with John Whitsitt to erect a church building in the town of Preëmption, in Mercer county, for such purpose, selecting as a site certain described land owned by Whitsitt, by which agreement Whitsitt promised to convey the lot of land to any ecclesiastical or corporate body of Presbyterians, for a place of public worship, so soon as they should be able to organize such society or corporation, provided they should erect a suitable house of public worship on the lot of ground; that Hammond and his associates proceeded to erect a building for public worship on the land; that the church building was dedicated in May, 1868, and that at the dedication Whitsitt repeated his promise to Hammond and the congregation or society, and the elders and deacons thereof, to convey the lot on which the building was erected, to the church or society, as soon as there was a church organization and any proper body to whom to convey, if the church should be dedicated as a Presbyterian church; that in November, 1868, there was effected an organization or worshiping congregation of the Presbyterian church at Preëmption, which has ever since continued; that from the time of its dedication the church was occupied by the society as a house of public worship, until March 1, 1881; that on the 2d day of June, 1880, the society effected a legal organization, and the persons above named were elected trustees; that on March 1, 1881, Whitsitt closed the doors of the church, and refused to let the society use the same as a place of public worship. The bill prays for a conveyance of the lot of ground upon which the church stands. The answer sets up that the church building was built by Whitsitt himself, and almost exclusively with his own money; that he purposed and intended, if the people in that neighborhood formed and organized a church, and subscribed funds enough,

9—110 ILL.

with the amount of funds he was willing to subscribe in the
first instance, to erect a church building; that he would deed
the land to the church, when legally organized as a corporate
body; that he suffered meetings to be held in the building,
but has kept the possession of it himself, and owns it; that
he never promised to any person or body that he would give
and deed the church and land, and that if he did so, it was a
naked promise, without binding force. And the answer sets
up the· Statute of Frauds, and that the claim is stale, and
barred by the Statute of Limitations. The court decreed ·the
relief prayed, and the defendant appealed.

It is contended that there was here, at the most, but a
verbal promise to make a gift, which was without considera-
tion, and is void. The testimony of Whitsitt himself is, that
the Preëmption Presbyterian church was commenced to be
erected in 1867; that he circulated a subscription paper for
the purpose of getting funds to build it; that he subscribed
$1000; that there was $800 or $900 subscribed by others;
that some of the subscribers paid, and some did not pay;
that he obtained all the subscriptions; that they were pay-
able to himself; that he undertook to build, and did build,
the church, himself; that no person but himself took any
part in getting subscriptions or making contracts for the
building; that the church cost about $2600; that he always
claimed the property, but said he would deed it when there
were proper trustees to whom to deed it. Under these cir-
cumstances, there was more involved in the case than a mere
naked promise on the part of the defendant. It is idle to
speak of these subscriptions of others, though payable to
defendant, as having been obtained and made for the purpose
of building a private church for the defendant, on his land.
They were obtained for the purpose named in the subscrip-
tion paper,—of building a Presbyterian church in Preëmp-
tion, and manifestly for the benefit of the Presbyterian
society at that place; and from the very fact of procuring

the subscriptions and expending them in the erection of the church building, the law would raise an implied promise on defendant's part to make a conveyance to the society of the ground upon which the church was erected. Such conveyance would be essential to the full enjoyment and control of the building by the society, and not to imply the promise to make it would be to admit the purpose of the perpetration of a gross fraud,—a supposition not to be entertained. It has often been held, in the case of mutual subscriptions for a common object, and there has been expenditure of money in the accomplishment of the object, that a subscription is binding as a valid contract, expenditures having been made on account thereof. (*Robertson* v. *March*, 3 Scam. 198; *Pryor* v. *Cain*, 25 Ill. 292; *Baptist Education Society* v. *Carter*, 72 id. 247; *McClure* v. *Wilson*, 43 id. 356; *Pratt* v. *Trustees*, 93 id. 475.) The church, here, was built mainly from subscriptions. Defendant put in some money additional to what was subscribed, but all on his part, we think, is to be regarded as subscription,—not only the $1000 which he did actually subscribe, but the additional money he contributed, and the church site. We thus hold the promise in this case to be more than a mere naked one to make a gift, and to be a promise which has the support of a sufficient consideration.

With respect to the defence under the Statute of Frauds, because of the promise not being in writing, we think there is sufficient here in the way of part performance in payment of purchase price, taking possession and making improvements, to take a case of a verbal agreement to convey land out of the operation of the statute. The expenditure of the subscriptions which were made, in the erecting of the building, may be regarded to be what is tantamount to the payment of the consideration. Even after the dedication of the building as a house of public worship, in May, 1868, until in March, 1881, when the defendant turned the key upon the door of the house, there was, we consider, all the possession

by the society of the church which is ordinarily had by any religious society of the church building which it owns. Immediately after the dedication a Presbyterian church was organized at the place, defendant being a member, and being elected one of the ruling elders, and the congregation then commenced its public worship in the building, and continued the same therein up to the date last named whilst they had a minister, which appears to have been about half the time. The meetings of the church were held in the building, and Sabbath schools; the church used the building as their own, claimed to own it, and had their church property in it. It is true defendant testifies the church did not at any time occupy the building without his consent; but we understand this to mean no more than his implied consent, arising from his suffering the occupancy of the building without objection. There is no evidence of any express consent ever having been asked or given. Defendant says that he became dissatisfied with the pastor in 1881; that the Presbytery refused to dissolve the pastoral relation, and he locked the church up, and refused to let them occupy it any longer. Here is the admission of a prior occupancy by the society.

Certain acts of defendant are pointed to as indicative that possession was all the while in him, as, retention of the keys of the church by himself and son; making repairs of the church at his own expense; his fencing off the church lot from the rest of his land, and putting a hedge around it at his own expense, and the church lot having always been taxed to defendant with his farm, and the taxes paid by him. He was a ruling elder of the church, and his son was janitor down to 1880. The retaining of the keys might be referred to the official capacity of defendant and his son, and the expenditures with respect to the property do not necessarily denote it to be his private property, or that it was held by him in his own possession. They might very well have been his free gifts for the benefit of the religious body there wor-

shiping, as were his other contributions additional to his subscription which he made toward the erection of the church. The acts named are by no means inconsistent with the full possession and enjoyment of the use, by the society, of the church building. Improvements were made in the putting up of a bell, which was done through another subscription, and there was some furnishing done by the society.

The point is much pressed that the proof does not support the allegations of the bill; that the bill alleges the agreement was made with William Hammond and others, and that there should be strict proof of an agreement made with William Hammond and others, in which there is not only entire failure, but that the name of Hammond does not appear at all in any of the affairs in question until his election as one of the trustees, on June 2, 1880, at the legal organization of the religious society. The particular named person with whom the agreement was made was not material, but the matter of substance was, whether there was such an agreement made for the benefit of this religious body; if so, then, with whomever made, on the effecting of a legal organization, and there being a corporate body capable of suing for the society, there might be enforcement in the name of the corporation of the contract made for the use and benefit of the society, no matter with whom made. We conceive it would be enough for the relief asked here if there had been but general declarations that defendant would make the conveyance, and the church had been built, in whole or in part, from subscriptions made on the faith of such declarations, or if there had been but the implied promise to convey which we find as arising from the circumstances, and that there would be no necessity of alleging or proving a promise to any person or persons in particular, and that any such averment is surplusage, and need not be proved. Any agreement which was made here was made for the use and benefit of this Presbyterian church, and these trustees who bring this suit rep-

resent the interests of all the church members as to church property, and may enforce agreements made for the use and benefit of the society before its legal organization.

It is very well settled that where subscriptions have been made in anticipation of the formation of a corporation, and the corporation is afterward formed, payment of such subscriptions is enforceable in the name of the corporate body. (*Cross* v. *Pinckneyville Mill Co.* 17 Ill. 54; *Johnston* v. *Ewing Female University,* 35 id. 518.) Besides, it is not the sole allegation of the bill, as to the making of the agreement, that it was made with Hammond and others, but the bill alleges further, that at the dedication of the church defendant repeated his promise to Hammond and the congregation or society, and elders thereof, to convey to the trustees of the society or church, as soon as organized as a church or ecclesiastical body, if the church should be then dedicated as a Presbyterian church. And the proof is, that on that occasion, at the close of the sermon, and before the dedication service, the defendant arose and made a statement of the cost of the church, and that it was all paid for; that there being no church organization, there was no one to deed it to, but that he would deed it as soon as there was a church organization, and anybody to deed to. The acts of dedication and organization of the church may be regarded as additional considerations for the promise.

It is objected that there should be no decree for a conveyance except upon the terms of refunding to defendant the amount he expended to build the church, over and above the subscriptions he obtained, and the expenses of the repairs and improvements he has made. It does not appear that any claim before was ever made for any of these expenses, and in view of defendant's statement at the dedication that the church was all paid for, we think what he expended in building the church, additional to his formal subscription, should be looked upon as a gratuity, as much so as the $1000 which

he subscribed, and his other expenditures, too, we think, must be regarded in the same light.

*Laches,* which is set up in the answer, is not available in such a case as this, where the complainants were in possession, as we find they were here.    *Mills* v. *Lockwood,* 42 Ill. 112; *Wilson* v. *Byers,* 77 id. 76.

The decree will be affirmed.

*Decree affirmed.*