## Shiffer, Trustee, *v.* Akenbrook et al.

[No. 10,780.   Filed March 11, 1921.]

1. Corporations.—*Organization.—Stock Subscriptions.—Liability of Subscriber.—Failure to Sign Certificate of Incorporation.* —The rule that persons desiring to form a corporation who did not make, sign and acknowledge the certificate of incorporation, as provided by §5062 Burns 1914, Acts 1907 p. 295, cannot be held to their stock subscriptions, is not applicable where the parties signed a subscription contract preliminary to the formation of the corporation. (*Indianapolis, etc., Co.* v. *Herkimer* [1874], 46 Ind. 142, and *Coppage* v. *Hutton* [1890], 124 Ind. 401, distinguished.)   p. 156.

2. Corporations.—*Subscription Contract.—Signing Articles of Incorporation.—Validity of Subscription.—*A preliminary subscription for shares of stock in a proposed corporation may be made by signing the articles of incorporation, in which case

the subscription is enforceable only against those acknowledging them; as to those not acknowledging them, the articles are incomplete, so that the subscription contract as to them is incomplete, and for that reason cannot be enforced. p. 156.

3. CORPORATIONS.—*Subscriptions for Stock.—Contract Separate from Articles of Incorporation.—Validity.*—A preliminary subscription for shares of corporate stock may be made by an instrument separate and apart from the articles of incorporation, and such a contract becomes enforceable when the organization of the proposed corporation has been completed. p. 156.

4. CORPORATIONS.—*Preliminary Subscription for Stock.—When Subscribers are Deemed Owners of Stock.*—A person, who before the organization of a corporation, subscribes for stock and afterwards claims to be a stockholder and acts as one in the meeting of the corporation, and whose claims are admitted by it by allowing him to act as such and by receiving payments for his stock, must be regarded as the owner of the stock thus subscribed for and acted upon. p. 159.

5. CORPORATIONS.—*Sale of Stock on Credit.—Validity.*—It is not necessary that a subscriber for corporate stock should have paid for it to make him its owner, as a corporation may extend credit for its stock, nor is it necessary that a certificate should have been issued therefor. p. 159.

6. CORPORATIONS.—*Contract for Sale of Stock.—Vesting of Title to Stock.*—Where a corporation has agreed that a person shall be entitled to a certain number of shares in its capital stock, to be paid for in the manner agreed upon, and such person has agreed to take and pay for them accordingly, he becomes the owner thereof by a valid contract, made upon a valid consideration. p. 159.

7. CORPORATION.—*Validity of Corporation.—Estoppel to Deny.*—A party is estopped to dispute the validity of a corporation when he has taken part in the management, acted as one of its trustees and contracted with it as a corporation. p. 160.

8. CORPORATIONS.—*Subscribers to Stock.—Estoppel to Deny Liability.*—Where defendants, who signed preliminary subscriptions for corporate stock, acted with other subscribers in appointing a committee to prepare, execute and file articles of incorporation, and, after the articles were signed, executed and filed, attended meetings of the stockholders and assisted in conducting the business affairs of the company, and paid the first call or installment on their subscriptions, they were estopped, when sued for the unpaid balance due on their subscriptions, to deny that they were stockholders and their lia-

Shiffer, Trustee, *v.* Akenbrook—75 Ind. App. 149.

bility as such; and it is immaterial whether there was a *de jure* or a *de facto* corporation. p. 161.

9. CORPORATIONS.—*Legality of Organization.—Estoppel to Deny. —Receipt of Dividends.*—A corporate stockholder who has received dividends on his stock with knowledge that it was not fully paid up is estopped to deny that the corporation was legally organized. p. 163.

10. CORPORATIONS.—*Subscribers to Stock.—Issuance of Stock Certificates.*—To constitute subscribers to corporate stock stockholders, it is not necessary that certificates of stock should be issued to them. p. 163.

11. CORPORATIONS.—*Subscriptions to Stock.—Repudiation.—Necessity of Call for Payment.*—When a subscriber to corporate stock repudiates his subscription, no call for payment of the money due thereon is necessary to charge him with liability. p. 164.

12. BANKRUPTCY.—*Trustee's Action to Collect Unpaid Stock Subscriptions.—Complaint.—Sufficiency.—Statute.—Applicability.*—In an action by a trustee in bankruptcy of a corporation to recover amounts due on unpaid subscriptions to the capital stock, it was not necessary that the complaint should allege that the corporation's board of directors had ordered the stock of the defendant subscribers sold and had exhausted the remedy afforded by §4046 Burns 1914, §3002 R. S. 1881, which section is not applicable to such a case, and does not prevent the trustee from maintaining the action. p. 165.

13. BANKRUPTCY.—*Trustee's Action to Collect Unpaid Stock Subscriptions.—Complaint.—Sufficiency.—Defects.*—On an action by a trustee, in bankruptcy of a corporation to collect unpaid stock subscriptions wherein plaintiff relied on estoppel of defendant subscribers to question the legality of the company's organization, it was not necessary to allege or prove that defendants had knowledge of the alleged defects in the articles of incorporation, or that their stock certificates had been tendered to them before the commencement of the action. ·p. 165.

14. PARTIES.—*Misjoinder of Parties Defendant.—Attack by Demurrer.—Statute.*—Misjoinder of parties defendant is no ground for demurrer under §344 Burns 1914, Acts 1911 p. 415. p. 165.

From Allen Superior Court; *Carl Yaple,* Judge.

Action by George M. Shiffer, trustee in bankruptcy, against Louis Akenbrook and others. From a judgment for defendants, the plaintiff appeals. *Reversed.*

*P. V. Hoffman, Robert W. McBride* and *A. E. Thomas,* for appellant.

*Neizer, Crosby & Murphy, Breen & Morris, Leonard, Rose & Zollars* and *Barrett, Morris, Hoffman & Barrett,* for appellees.

McMahan, J.—Complaint by appellant as trustee in bankruptcy of a bankrupt Indiana corporation against subscribers to its capital stock to recover unpaid balances on their several subscriptions. A demurrer to the amended second and third paragraphs of complaint was sustained. Appellant refused to plead further and judgment was rendered against him.

The amended second paragraph of complaint alleged that appellees with others entered into a written contract, by which they mutually agreed with each other to organize a corporation at Ft. Wayne to manufacture and sell shoes under certain United States patents, such corporation to be incorporated when $100,000 or more of subscriptions to the capital stock should be subscribed, the total capital to be $200,000, in shares of $100 each, the parties signing the contract setting opposite their names the amount of stock to be taken by each of them; that after subscriptions had reached more than $100,000, the subscribers thereto delivered the contract to a committee of their number for the purpose of having said company incorporated; that the committee in order to carry out the purpose, prepared articles of association, five of their number signing and acknowledging the same, after which it was filed in the office of the secretary of state, a duplicate copy being also filed and recorded in the recorder's office of Allen county; that the secretary of state issued to them a certificate of incorporation of the Cushion Heel Shoe Company, with its office and principal place of business at Ft. Wayne; that the company was intended to be, and was

incorporated under the Acts of 1875, as amended in 1907; that the articles of association provided that the name of said corporation should be "The Cushion Heel Shoe Company"; that "the purpose of the incorporation shall be the manufacture of boots and shoes and the purchase and sale of boots and shoes and leather and findings," the capital stock to be $200,000 divided into shares of the par value of $100; that all the necessary steps were taken by the committee to incorporate the company in pursuance to the contract; that after the incorporation the directors of the company accepted the contract of subscriptions to the corporation as regular and valid subscriptions to the capital stock thereof, and the appellees claimed and accepted the rights and privileges of stockholders in the corporation and promised to pay their subscriptions, and did pay the first call on the subscriptions made by the directors so that they became entitled to all the rights and privileges of stockholders in the corporation and assumed all the liabilities of subscribers to the corporation, participated in the affairs of the corporation, attended meeting of its stockholders and voted thereat for the election of directors and the adoption of by-laws and by their acts and declarations proclaimed to the public and to persons dealing with the corporation and selling it goods and extending it credits, that they were stockholders in said corporation holding the respective shares of stock therein subscribed in the contract; that they held out to the public and to persons dealing with such corporation and giving it and extending credit to it that their subscriptions were *bona fide* subscriptions, and that such corporation had a capital stock of $200,000, during all the time from the incorporation of said company and while it was doing business until it failed and went into bankruptcy; that, after the incorporation of the com-

pany in December, 1909, it leased a large and commodious building and equipped it with the necessary machinery, fixtures and findings to manufacture shoes under said patents and did manufacture shoes with cushion heels under the patents mentioned in the contract of subscriptions to the proposed corporation and purchased leather and findings as incident to the business, sold shoes so manufactured in large quantities, and continued the business until it was adjudged a bankrupt. October 1, 1912; that, after the payment by appellees of the first stock call made upon them, the directors of said company made repeated calls for payment of said stock yet due from appellees, but that they failed to make such payments, by reason of which all their stock subscriptions became due before the corporation was adjudged a bankrupt; that during all the period they failed to make the payments on their stock calls they held themselves out as stockholders in the corporation and took no steps to withdraw or rescind their subscriptions because of nonliability, but allowed the debts for which the company failed to be contracted in the belief that their subscriptions were a part of the assets of the company, and it, but for nonpayment of said subscriptions the company would be solvent and able to pay its creditors.

The contract, a copy of which was filed with and made a part of the complaint, provided that twenty-five per cent. of the subscriptions to stock should be payable when the company was organized and the balance in monthly installments at the call of the directors of the company.

It is also alleged that there was a balance due from appellees on their subscriptions, and that it was necessary to collect the amount so due in order to pay the debts and liabilities of the corporation; that a call and demand had been made on each appellee to pay the balance

due from each of them, and that they had refused to make such payment.

The third paragraph of complaint, after alleging the signing of the subscription contract, alleges that all conditions precedent to the organization having been fully performed, the corporation was duly organized under and pursuant to the provisions of §5062 Burns 1914, Acts 1907 p. 295; that the subscribers to the stock of the proposed corporation caused to .be prepared articles of incorporation of the proposed association under the name of "The Cushion Heel Shoe Company," said articles being signed and acknowledged by five of the subscribers, one copy of the articles being filed with the secretary of state and a duplicate thereof being filed in the recorder's office of Allen county, and that a certificate of incorporation was procured from the secretary of state.

The name, purpose, amount of capital stock, etc., as stated in the articles of incorporation, are alleged to be the same as stated in the amended second paragraph. It also alleges that, after the organization of the corporation, the board of directors accepted the appellees as stockholders and appellees accepted the rights and privileges of stockholders in such corporation; that the company engaged in the business of manufacturing and selling shoes under the patents named in the stock subscriptions from the time of the organization in 1909 to October, 1912, when it was declared bankrupt; that prior to the bankruptcy of the company its board of directors demanded payment of the appellees of the amount of such subscriptions and that the appellant has likewise demanded payment which has been refused; that said subscriptions are due and unpaid; that the referee in bankruptcy has made assessments against appellees to the extent of sixty-five per cent. of their subscriptions and has also demanded payment which has

been refused, and in order to pay the debts of the bankrupt corporation it will be necessary to collect from each appellee sixty-five per cent. of his stock subscription and demanding judgment.

Appellees cite §5062 Burns 1914, *supra,* which provides that when three or more persons desire to form a company for certain purposes, they shall make,

1. sign, and acknowledge a certificate of incorporation, and contend that, since they did not "make, sign and acknowledge" the certificate, they cannot be held to their stock subscriptions. This contention cannot prevail. *Indianapolis, etc., Co.* v. *Herkimer* (1874), 46 Ind. 142, and *Coppage, Rec.,* v. *Hutton* (1890), 124 Ind. 401, 24 N. E. 112, 7 L. R. A. 591, cited by appellees in support of this contention, are not in point. There were no preliminary stock subscriptions in either of these cases. The defendants in each of these cases signed a certificate of incorporation, but did not acknowledge it as required by the statute. The rule announced is not applicable where the parties signed a subscription contract preliminary to the formation of the corporation as was done in the case now under consideration. A preliminary subscription for stock

2. may be made by signing the articles of incorporation in which case they are enforceable only against those who acknowledge the articles. As to those who did not acknowledge them, the articles are incomplete, and as a consequence the subscription contract as to them is incomplete, and for that reason cannot be enforced. *Coppage, Rec.,* v. *Hutton, supra.* Such a subscription may also be made by an instrument separate and apart from the articles, in which case

3. they become enforceable when the organization of the proposed corporation has been completed. 1 Cook, Stock and Stockholders (3d ed.) §72; *Whitsitt* v. *Trustees, etc.* (1884), 110 Ill. 125, 10 Am. Corp. Cas.

223-228; *Hughes* v. *Antietam, etc., Co.* (1870), 34 Md. 316, 3 Am. Corp. Cas. 377; *Ashuelot, etc., Co.* v. *Hoit* (1876), 56 N. H. 548, 8 Am. Corp. Cas. 383; *Rikhoff* v. *Brown's, etc., Co.* (1879), 68 Ind. 388.

It is next insisted that the complaint fails to state facts sufficient to show the organization of a *de jure* corporation. The contention of the appellees is that the scope and purpose of the organization are broader and extend beyond the powers allowed by the statute and that, when a subscription contract recites the purpose of the corporation to be to manufacture certain articles or that a certain amount of capital shall be subscribed before it shall be binding, such acts are conditions precedent, performance of which are imperative before the contract is binding on or enforceable against the subscribers. Appellant, however, contends that, where one signs a preliminary contract by which he agrees to take stock in a corporation to be thereafter organized and after the organization of the corporation, with the assent of the corporate body, assumes the duties and accepts the privileges of a stockholder, he is estopped from denying his liability as a stockholder. If the appellees by their acts are estopped to deny their liability it is immaterial whether the corporation is a *de jure* or *de facto* corporation.

The amended second paragraph of complaint, after setting out the steps taken to perfect the organization of the corporation, directly and specifically alleges that the appellees claimed and accepted the rights and privileges of stockholders, promised to pay their subscriptions and in fact paid the first call made by the directors, assumed all the liabilities of subscribers, participated in the affairs of the corporation, attended meetings of its stockholders and voted thereat for the election of directors and for the adoption of by-laws and by their acts and declarations proclaimed to the public and to persons

dealing with said corporation and selling it goods and extending it credits that they were stockholders therein, holding the respective shares of stock as mentioned in the subscription contract; that said corporation furnished and equipped a building with machinery, fixtures, and findings to manufacture shoes under the patents mentioned in the subscription contract and did manufacture shoes under said patents until it was declared bankrupt three years later; and that during all of said time appellees held themselves out as stockholders in said corporation.

The third paragraph, after setting out the preliminary facts, alleges that after the organization of said corporation, it, by its directors, accepted appellees as stockholders and that appellees accepted the rights and privileges of stockholders in the corporation.

Are the facts alleged in either or both of these paragraphs sufficient to estop appellees from denying their liability on their subscription contract?

In 1 Cook, Corporations (7th ed.) §52, in discussing the question of estoppel, the author states the law as follows: "When, however, one accepts or assumes the position and duties and claims the right and privileges and emoluments of a stockholder, and the corporation accepts and acquiesces therein, such person is estopped to deny that he is a subscriber, even though there may have been something irregular or defective in the form or manner of his subscription, or there may have been no formal subscription at all." And the Supreme Court of the United States, in *Sanger* v. *Upton* (1875), 91 U. S. 56, 23 L. Ed. 220, said: "Where there are defects in the organization of a corporation which might be fatal upon a writ of *quo warranto,* a stockholder who has participated in its acts as a corporation *de facto,* is estopped to deny its rightful existence." Citing *Abbott* v. *Aspinwall* (1857), 26 Barb. (N. Y.) 202.

So a person, who before its organization, subscribes for stock and afterwards claims to be a stockholder and acts as one in the meeting of the corporation, and

4. whose claims are admitted by it by allowing him to act as such and by receiving payments for his stock, must be regarded as the owner of the stock thus subscribed for and acted upon. *Chester Glass Co.* v. *Dewey* (1819), 16 Mass. 94, 8 Am. Dec. 128; *Spear* v. *Crawford* (1835), 14 Wend. (N. Y.) 20, 28 Am. Dec. 513; *Kidwelley Canal Co.* v. *Raby* (1816), 2 Price Ex. R. 93; *Kennebec & Portland R. R. Co.* v. *Palmer* (1852), 34 Me. 366. To make him an owner it is not necessary that he should have paid for his stock. A corpo-

5. ration may extend credit for its stock as well as for any other property sold by it. Nor is it necessary that a certificate should have been issued.

6. These only constitute proof of property, which may exist without them. Where a corporation has agreed that a person shall be entitled to a certain number of shares in its capital, to be paid for in a manner agreed upon, and that person has agreed to take and pay for them accordingly, be becomes their owner by a valid contract, made upon a valid consideration. *Chaffin* v. *Cummings* (1853), 37 Me. 76.

In *Phoenix, etc., Co.* v. *Badger* (1875), 6 Hun. (N. Y.) 293, the defendant by way of defense insisted that the statute did not authorize the creation of a corporation for the purposes expressed in the certificate of incorporation, and that therefore his subscription was void. "But," said the court, "it appears that the defendant was not only one of the originators of the enterprise, but one of the trustees, and took an active part in the organization and management of the company, aiding in holding it out to the public as a lawfully organized corporation; that the company is insolvent, and that this suit, though commenced by the corporation,

is in fact prosecuted by and in behalf of a receiver, and for the benefit of creditors. Under such circumstances the defendant is estopped from denying the legal existence and validity of the corporation, and the *de facto* existence of the corporation is sufficient." Citing *Dorris* v. *French* (1875), 4 Hun. (N. Y.) 292, where the court said: "* * * there should be some means of ascertaining who had become stockholders, and the amount of stock held by them, besides the certificate of incorporation; for that might not show the names of the stockholders, or the amount of stock held by any of them. The facts might be established by proof of payments on account of stock, and the taking of the usual stock certificate; but that kind of proof would not be as satisfactory as the ordinary mode of subscribing which was adopted in this case. We are of the opinion, therefore, that the original liability of the defendant as a subscriber to stock was established. Stockholders are estopped to deny the lawful existence of a corporation which they helped to create."

A party is estopped to dispute the validity of a corporation when he has taken part in the management, acted as one of its trustees and contracted with it as a corporation. *Phoenix, etc., Co.* v. *Badger, supra.* The court in the course of its opinion in that case also held that an objection that other subscribers who had not paid should have been made parties is not available when the objection was not raised by answer, there being no finding or request to find in reference thereto or exceptions raising the point; that the action was properly brought upon the original subscription, and that it was not necessary to allege calls. And the same court in *Wheeler* v. *Millar* (1882), 90 N. Y. 353, said: "A share of stock like other property may be sold on credit. The title may pass, the right become vested, if such be the intention and contract

of the parties, although payment is deferred and the usual written evidence of title is absent. Whatever may be said of a case where no fact is present as to the foundation of an inference that title has passed, except the bare fact of a subscription, it is entirely reasonable that where, in addition, the corporation has explicitly recognized the alleged stockholder as such, and the latter has acted in that capacity, such fact should be deemed sufficient to justify the conclusion of ownership, and make the subscriber a stockholder." And the payment of an installment by the defendant without objection is a sufficient recognition of the legal existence of the corporation to enable it to recover subsequent assessments. The acceptance of stock and the payment of the assessment thereon is a waiver of the objection that otherwise might have been urged upon the ground that all the share had not been taken, if such was the fact. Thompson, Liability of Stockholders §120; *Inter Mountain Pub. Co.* v. *Jack* (1885), 5 Mont. 568-576, 6 Pac. 20. And in *Grange* v. *Ferguson* (1903), 98 Me. 176, 56 Atl. 648, the court said: "We do not think it necessary to decide the question of the strict legality of steps undertaken for incorporation. Whether duly incorporated or not, the Grange maintained an existence and organization in fact which the defendant recognized as sufficient when he accepted office under it and took charge of its property as its treasurer." In *Tanner* v. *Nichols* (1904), (Ky.) 80 S. W. 225, the court held that where a subscriber was elected a director and acted as such, he was held estopped to raise the question as to whether it was incorporated.

Appellees in the instant case signed the stock subscription; they acted with the other subscribers in appointing a committee to prepare, execute and file articles of incorporation; after the

articles of incorporation were signed and executed by the requisite number of subscribers and filed, they attended the meetings of the stockholders and entered into the conduct of the business affairs of the corporation and paid the first call or installment on their subscriptions. Knowing themselves to be subscribers for stock and that articles of incorporation had been executed by the requisite number of stockholders and filed as required by law, they made no effort to withdraw their subscriptions but asserted their rights as stockholders and later made partial payment on their stock subscriptions. If they did not at that time understand that they were stockholders and liable under their contract to pay the amount of their subscriptions, Why did they pay? They by their own acts admitted their liability. They by their own acts held themselves out to the public as stockholders; debts were incurred on the strength of their being stockholders. By their acts they recognized the validity of the corporation and are now estopped. *Ex Parte Besley* (1850), 48 Eng. Chan. 137, 3 McN. & G. 287; *Boggs* v. *Olcott* (1866), 40 Ill. 303; *Haynes* v. *Brown* (1858), 36 N. H. 545-563; Elliott, Private Corporations §85; 2 Clark and Marshall, Corporations §456.

It is not material in such cases whether the corporation is a *de jure* or a mere *de facto* corporation. 1 Cook, Stock and Stockholders §§52, 183-185, 198; 1 Thompson, Corporations §§528, 1337, 1376; 2 Thompson, Corporations §§1865-1867; *Sanger* v. *Upton, supra; Upton* v. *Tribilcock* (1875), 91 U. S. 45, 23 L. Ed. 203; *Dayton, etc., R. R. Co.* v. *Hatch* (1855), 1 Disney (Ohio) 84; *Upton* v. *Hansbrough* (1873), 3 Bissell 317, Fed. Cas. No. 16,801; *Marion Bond Co.* v. *Mexican Coffee, etc., Co.* (1902), 160 Ind. 558, 65 N. E. 748; *Rikhoff* v. *Brown's, etc., Co., supra.*

"Payment on subscription or an installment thereon will generally be sufficient recognition of the legal exist-

ence of a corporation to operate as an estoppel." 2 Fletcher, Cyclopedia Corporations §715; *Allen* v. *Rhodes* (1916), 230 Fed. 321, 144 C. C. A. 463; *Maltby* v. *Northwestern Va. R. Co.* (1860), 16 Md. 422; *Canfield* v. *Gregory* (1895), (Conn.) 33 Atl. 536; *Greenbrier Ind. Exposition* v. *Rodes* (1893), 37 W. Va. 738, 17 S. E. 305.

A stockholder who has received dividends on his stock with knowledge that it was not fully paid up is estopped to deny that the corporation was not legally or-

9. ganized. *Fish, Rec.,* v. *Smith* (1900), 73 Conn. 377, 47 Atl. 711, 84 Am. St. 161; *Lincoln Park Chapter* v. *Swatek* (1903), 204 Ill. 228, 68 N. E. 429. And it was held in *Greenbrier Ind. Exposition* v. *Squires* (1895), 40 W. Va. 307, 21 S. E. 1015, 52 Am. St. 884, that one who signs a preliminary agreement for the formation of a corporation, but fails to acknowledge it, and who attends the organization meetings held by the stockholders and, after the issuing of the stock to him, voted for the directors and paid part of the first installment thereon, was estopped from denying the corporate existence and from urging technical defects in its organization. In *Allen* v. *Rhodes, supra,* some of the subscribers were directors of the corporation and attended meetings as such; others attended and participated in stockholders' meetings; while others paid an assessment on their stock subscriptions. It was there held that all were "clearly estopped."

To constitute appellees stockholders, it was not

10. necessary that certificates of stock should have been issued to them. *San Joaquin L. & W. Co.* v. *Beecher* (1894), 101 Cal. 70, 35 Pac. 349.

Our statute §5070 Burns 1914, Acts 1913 p. 282, provides that after one year from the organization of the company the directors shall be elected by the stockholders. It is a fair inference from the allegations of the

complaint that appellees attended stockholders' meetings held at least one year after the corporation was organized, and that they participated therein by voting for directors.

It has been held that, if debts have been incurred by a defendant corporation, subscribers who stand by and make no objections will be estopped to plead the nonexistence of the corporation when sued for the benefit of the creditors. *Allen* v. *Rhodes, supra; Silvain* v. *Benson* (1915), 83 Wash. 271, 145 Pac. 175; *National Realty Co.* v. *Neilson* (1913), 73 Wash. 89, 131 Pac. 446; *Cox* v. *Dickie* (1908), 48 Wash. 264, 93 Pac. 523; 26 Am. and Eng. Ency. Law (2d ed.) 1011; 10 Cyc 244-249; 5 Thompson, Corporation (2d ed.) §5183. And this seems to be the rule in Nebraska. *Lusk* v. *Riggs* (1904), 70 Neb. 713, 97 N. W. 1033. "If the defendant, as alleged in the petition, participated as a stockholder in the election of the directory, his right to controvert the corporate existence of the company, may be very questionable." *Henderson, etc., R. Co.* v. *Leavell* (1855), 16 B. Mon. (Ky.) 358.

Each paragraph of the complaint alleged the acceptance of appellees several subscriptions, that, prior to the time when the corporation became a bankrupt, its board of directors made repeated calls upon them to pay their stock and the failure and refusal of appellees to make such payments. While it is not specifically alleged that appellees were notified of such calls, we think that notice can be inferred from the fact that they refused to pay after such calls had been made. When a subscriber repudiates his subscription no call is necessary. *Cass* v. *Pittsburgh, etc., R. Co.* (1875), 80 Pa. St. 31.

The subscription contract of appellees created a debt which under the law it was their duty to pay, and it was

the privilege of appellant to sue for such debt if not paid.

There is no merit in the contention of appellees that the complaint should allege that the board of directors of the insolvent corporation had ordered the stock of appellees sold and had exhausted the remedy afforded by §4046 Burns 1914, §3002 R. S. 1881. This section is not applicable to a case like the one under consideration, and does not prevent the appellant from maintaining this action. *Imperial Land, etc., Co.* v. *Oster* (1917), 34 Cal. App. 776, 168 Pac. 1159.

In view of our holding that appellees are estopped from setting up any irregularity in the incorporation of the bankrupt corporation as a defense, it is not necessary for us to give any consideration to the effect of the act of March 14, 1913 (Acts 1913 p. 681, §2, §5062b Burns 1914), legalizing corporations where the certificate of incorporation embraced more purposes and objects than authorized by law.

In an action of this kind it is not necessary for plaintiff to allege or prove that the defendants had knowledge of the alleged defects in the articles of incorporation, or that the stock certificates had been tendered to them before the commencement of the action. Appellees also contend that their demurrer should have been sustained because of misjoinder of the parties defendant. Misjoinder of parties defendant, however, is no ground for demurrer. §344 Burns 1914, Acts 1911 p. 415.

The court erred in sustaining the demurrer to each paragraph of complaint. Judgment reversed for further proceedings not inconsistent with this opinion.